966 So.2d 10 (2007)
MERCEDES HOMES, INC., A Florida Corporation, Appellant,
v.
Luis R. COLON, Appellee.
No. 5D05-4292.
District Court of Appeal of Florida, Fifth District.
August 10, 2007.
Rehearing Denied October 11, 2007.
*11 David B. Weinstein and Kimberly S. Mello of Greenberg Traurig, P.A., Tampa, for Appellant.
Michael Manglardi of Attorneys Trial Group, Orlando, and Robert Hornstein, Jacksonville, for Appellee.
PALMER, C.J.
Mercedes Homes, Inc. (Mercedes) appeals an order entered by the trial court denying its motion to compel arbitration and to stay litigation.[1] Determining that Mercedes was entitled to have its motion to compel arbitration granted, we reverse.
Luis Colon entered into a contract with Mercedes for the construction of a home. The contract included a provision requiring Mercedes to install sod on Colon's yard. Eleven days after closing on his home, Colon fell while walking in his yard. He thereafter filed suit against Mercedes, alleging negligent installation of the sod and resulting bodily injury.
Mercedes responded by filing a motion to compel arbitration and to stay the litigation based on an arbitration agreement entered into between the parties in connection with a home warranty purchased by Colon from Mercedes. The arbitration agreement, in pertinent part, reads as follows:
ARBITRATION Any and all claims, disputes and controversies by or between the Homeowner, the Builder, HBW VI, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach *12 of any alleged duty of good faith and fair dealing, shall be submitted to arbitration. . . .
This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.
(Emphasis added). In the same home warranty document, negligence suits were specifically excluded from coverage under the warranty by the following language:
You are waiving the right to seek damages or other legal or equitable remedies from your Builder, his subcontractors, agents, vendors, suppliers, design professionals and materialmen, under any other common law or statutory theory of liability, including but not limited to negligence and strict liability. Your only remedy in the event of a defect in or to your Home or in or to the real property on which your Home is situated is the coverage provided to you under this express limited warranty.
(Emphasis added).
In filing its motion to compel arbitration, Mercedes argued that Colon's personal injury claim was arbitrable and further that any dispute about its arbitrability must be decided by the arbitrator, not the trial court. Colon responded by arguing that he was not required to arbitrate because his negligence claim was excluded from the express provisions of the warranty and, thus, also excluded from the arbitration agreement. Colon did not contend that the arbitration agreement was invalid or unenforceable because of unconscionability, lack of consideration, misrepresentation, or any other cause. Rather, he simply argued that his negligence claim was beyond the scope of the arbitration agreement because the home warranty agreement which contains the arbitration agreement excludes claims for negligence. After conducting a hearing, the trial court entered a written order denying Mercedes' motion to compel arbitration. This appeal timely followed.
Mercedes argues that the trial court erred in deciding the scope of the instant arbitration argument because the parties had vested the authority to make that decision in the arbitrator. We agree.
The arbitration agreement requires the arbitrator, not the trial court, to determine the scope of arbitrable issues. The language of the arbitration agreement is clear:
Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.
The parties' intent to vest the arbitrator with broad authority is demonstrated by the expansive language of the arbitration agreement. Under the arbitration agreement, the arbitrator is empowered to determine any and all claims, disputes, and controversies arising from or related to the warranty and to any defect in or to Colon's home or the real property on which the home is situated. By the terms of the arbitration agreement, the parties agreed to submit claims to arbitration that were far broader than claims made under the warranty agreement, as long as those claims related to the subject home or the real property.
*13 Our conclusion is compelled by the case of First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In First Options, Mr. and Mrs. Kaplan, along with Mr. Kaplan's wholly owned investment company, MKI, were in a dispute with First Options resulting from a "workout agreement." The workout agreement was embodied in four documents and governed the working out of debts owed by the Kaplans and MKI to First Options. When First Options' demands for payment went unsatisfied, it sought arbitration under an arbitration agreement contained in the workout document. MKI had signed the workout document containing the arbitration agreement; the Kaplans had not. MKI submitted to arbitration but the Kaplans objected, arguing that their dispute was not arbitrable. The arbitrators decided they had the authority to rule on the merits and ruled in favor of First Options. Although the district court confirmed the award, the circuit court of appeals reversed, holding that the Kaplans' dispute was not arbitrable. The Supreme Court granted certiorari to consider two questions regarding the standard the court of appeals used to review the determination that the Kaplans' dispute was arbitrable.
The Supreme Court first identified the three types of disagreements involved:
First, the Kaplans and First Options disagree about whether the Kaplans are personally liable for MKI's debt to First Options. That disagreement makes up the merits of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the arbitrability of the dispute. Third, they disagree about who should have the primary power to decide the second matter. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)? We consider here only this third question.
First Options, 514 U.S. at 942, 115 S.Ct. 1920.
The Supreme Court, thereafter, set forth the following standard for considering "who" should decide the arbitrability of a dispute:
We believe the answer to the "who" question (i.e., the standard-of-review question) is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances. If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently. These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration.

*14 We agree with First Options, therefore, that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.
When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts.
Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.
First Options, 514 U.S. at 943-44, 115 S.Ct. 1920 (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal citations omitted)).
In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the Supreme Court reiterated that
[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability" is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.
(quoting AT & T Technologies, Inc., 475 U.S. at 649, 106 S.Ct. 1415).
Here, the language of the arbitration agreement clearly and unmistakably requires the arbitrator to decide, in the first instance, the scope of the arbitration provision and the enforceability of any purported limitation of Mr. Colon's right to pursue a claim for personal injuries. Thus, the trial court erred in denying Mercedes' motion to compel arbitration.
The Second District Court of Appeal reached the same conclusion in Mercedes Homes, Inc. v. Rosario, 920 So.2d 1254 (Fla. 2d DCA 2006). In that case, the Rosarios contracted with Mercedes to build a house and they received the same home warranty and arbitration agreement at issue in this case. After they moved in, the Rosarios noticed that the windows were leaking, causing mold to grow. They sued Mercedes for breach of contract, violation of Florida's building code, violation of Florida's Deceptive and Unfair Trade Practices Act, and fraudulent concealment. Mercedes moved to compel arbitration. Among other things, the Rosarios argued that the arbitration agreement did not apply because the warranty excluded coverage for violations of the building code, mold damage, and personal injury. The Second District rejected the Rosarios' argument, holding that the trial court should have compelled arbitration because the arbitration agreement "clearly states that disputes regarding the interpretation of the arbitration clause, including the scope of arbitrable issues, will be decided by the arbitrator." Rosario, 920 So.2d at 1256.
In closing, we note that the dissent argues that, at the least, we should remand the case to the trial court to consider the issue of unconscionability. However, Colon's issues on appeal did not include either an argument that the provision was unconscionable or a request that we remand for consideration of unconscionability. Accordingly, it would not be proper for us to remand for that purpose. See Norris v. Edwin W. Peck, Inc., 381 So.2d 353 (Fla. 5th DCA 1980).
We reverse and remand for further action consistent with this opinion.
REVERSED and REMANDED.
ORFINGER, J., concurs.
GRIFFIN, J., dissents with opinion.
GRIFFIN, J., dissenting.
Prosaic as the majority's decision in this case may seem, its effect is, in my opinion, *15 quite remarkable. It places an imprimatur of judicial approval on a scheme whose ambitious end is the elimination of personal injury claims in any case where the victim has a contractual relationship with the tortfeasor. As the majority opinion reflects, the strength of this scheme is that it is grounded quite firmly in a virtually unbroken line of decisions of the United States Supreme Court.[1] The scheme works by simply connecting the dots between these decisions and incorporating their precepts into a series of documents representing the contractual relationship between the consumer/victim and the tortfeasor. In this case, for example, there are three documents, each of which contains a seemingly innocuous component, but which, when combined, create a kind of chain reaction that can virtually atomize any tort claim.
I will not try to reproduce in detail the documents involved in this case. They are simply too lengthy, and to do so seems somehow reprehensible-a little like publishing the blueprints for a nuclear device.[2] Basically, however, the following is a general description of how the scheme works. For simplicity, assume that the tortfeasor is a seller and the victim is a buyer of his goods. In the case before us, the product bought and sold was a new Mercedes home.
First, in your purchase contract document, tell the buyer that you supply your product with a special (but) "limited warranty". The warranty might make a soothing reference to a desirable outcome like "Asset Protection" and the name might suggest that the warranty comes from a very important warranty-giving company. Specify that it is the buyer's only remedy for any construction defect.
Several months later, when the home has been built, make the buyer fill out an "application" for this warranty, which will convey the impression that it is both desirable and exclusive, even though it is both required and automatic. The seller will pay the "premium" himself, which avoids any effort on the part of the consumer to refuse to sign up. The application must contain a provision that the buyer agrees that the warranty is an express limited warranty and that the seller can be liable to no one for any claim that is not covered by the warranty documents. Then, give the buyer the thirty-one page Warranty Booklet. Among other things, it will explain that the warranty is actually a contract between the buyer and the seller, not the warranty company; and that the warranty company is not a warrantor but a "warranty administrator" who has only undertaken "certain tasks and . . . certain obligations."
Somewhere after the provision informing the buyer that this warranty will be their exclusive remedy and that no person or entity will be liable to the buyer for any claim not covered by the warranty, add a provision that excludes personal injury claims from the warranty. This is a key provision whose purpose is to transmogrify a warranty exclusion into a release. For *16 good measure, include a waiver by the buyer of any right the buyer might have to seek damages from anyone connected with the product for damages under any theory of liability, including negligence and strict liability.
The problem, of course, is how to get any court to accept this document as a release of liability for personal injury. This, I suspect, would not be easy in any state, and given prevailing Florida law on liability releases, it would be nearly impossible to have enforced in this State. The solution is not to try. Instead, included in that thirty-one page warranty booklet is a provision that all claims arising not only under the warranty but also broadly "related to" any claim, including: "the subject home, to any defect in or the real property on which the subject home is located, or the sale of the subject home by the builder . . ." must be submitted to arbitration.[3] *17 (Please pause and take a moment to read the arbitration clause.)
A casual examination of these documents might lead a careless reader to think that, if the claim is for a personal injury and the warranty expressly excludes any claim for personal injury, there would be nothing to arbitrate. According to the majority, however, if the arbitration provision in the warranty requires the question of what is arbitrable to be submitted to the arbitrator, even though it is clear that the claim is not covered by the warranty, the question of whether the warranty operates as a bar to any personal injury claim must be decided in arbitration by the arbitrator. But see Nunez v. Westfield Homes of Florida, Inc., 925 So.2d 1108 (Fla. 2d DCA 2006); Grosseibl v. J. Chris Howard Builders, 739 So.2d 1255, 1257 (Fla. 5th DCA 1999) (arbitration agreement placed in a separate warranty agreement and the warranty does not cover any of the disputes or claims alleged in the complaint does not apply to require arbitration of non-warranty claims).
The final phase of this scheme is the most important. It is essential to be precise in the arbitration provision about exactly what arbitration is required. Specify who the arbitrator will be and what rules will apply. Find a for-profit arbitration service with a serious-sounding name suggesting expertise in whatever product you have produced, and a good acronym. What their actual qualifications are, or are not, will be none of the buyer's business, and the case law across the country suggests that unless the president of such arbitration service actually perjures himself, their role as arbitrator and their power based on the arbitration "agreement" to determine both technical and legal issues will usually be enforced. Because you refer many matters to this arbitration service and specify them by name in the printed form contract, they will know that you admire their decision making. If you cease to include them in your contracts or refer matters to them, they will understand that you no longer admire their decision making. This provides the economic incentive to rule in favor of the seller that is so woefully lacking in judicial proceedings. As a fail-safe device, include a provision that the seller, at his sole discretion, can select any other arbitration service he chooses.
The plan is not fool-proof, but it seems to be working pretty well so far.

This Case Is an Example of How the Plan Works
By virtue of the majority's agreement with Mercedes Homes that their documents require Mr. Colon's personal injury claim to be sent to arbitration with Construction *18 Arbitration Services, Inc. ["CAS"], even though it is clear that he is making no claim under the warranty and that he has no claim under the warranty, the CAS arbitrator will now decide whether the combination of the Mercedes purchase contract, the Home Buyers Warranty VI application form signed by Mr. Colon and the HBW VI warranty booklet constitute a release by Mr. Colon of any personal injury claim he may have against Mercedes. In my view, the majority has gone wrong by interpreting the documents to require that any dispute, including arbitrability, whether arising under the warranty or not, has to be arbitrated.
The majority's error lies in its application of the First Options v. Kaplan case.[4] Having concluded that the language of the arbitration agreement in the warranty booklet includes clear language of agreement to arbitrate the scope of arbitrable issues, the majority concludes its work is done. This is wrong for several reasons. First and foremost, the majority ignores the structure of the overall agreement and, accordingly, the context of the "arbitrability" language. The correct question to ask under First Options is "did the parties agree to submit the issue of arbitrability to arbitration," which is a matter of state law concerning the formation of contracts. 514 U.S. at 944, 115 S.Ct. 1920. The second question is "arbitrability of what?" Did Mr. Colon agree to the arbitration of the arbitrability of any claim or only warranty claims? The agreement to arbitrate arbitrability has to be clear and unmistakable. Id. A party can only be forced to arbitrate those issues it specifically agreed to arbitrate. Id. The problem in this case is that Mercedes Homes chose to put its stipulation for arbitration of arbitrability inside a separate warranty booklet issued by a third-party warranty company as part of the purchase of warranty coverage by the seller. It defies credulity to say that it is probable, much less clear and unmistakable, that in accepting the builder's warranty as explained in the thirty-one page booklet, Mr. Colon intended to submit to arbitration any claim extraneous to the warranty, or to waive any claim for personal injury, much less that he agreed to submit to arbitration the question whether his asserted waiver of any claim for personal injury is arbitrable. As the case law sadly reflects, many judges haven't appreciated the implications of these purposely complex provisions, much less the average consumer. The arbitration agreement contained in the purported third-party warranty must be confined to the warranty. I say that the provision relied on by the majority gives the arbitrator the power to decide what is or is not within warranty arbitration, nothing more. Mr. Colon's claim is indisputably not a warranty claim so there is nothing for the arbitrator to decide.
This conclusion is also reached as a matter of state law interpretation of contracts under Florida law. In the Rosario[5] opinion, relied on by the majority, the court unfortunately did not consider the structure of the contractual arrangement between the buyer, seller and HBW VI and the placement of the arbitration provision in the warranty booklet instead of in the purchase contract. This issue, however, has directly and extensively been considered in other Florida cases, such as the Grosseibl and Nunez decisions referenced above. In Nunez, the court found that a buyer's claim that his home was built in violation of the building code was not within the scope of the warranty and, therefore, *19 a demand for arbitration under the arbitration provision in the warranty did not cover the plaintiff's claims.
This Court's earlier decision in Grosseibl is even more specific on this point. If there is a tort claim between parties to a contract containing an agreement to arbitrate but the claim is not within the warranty provisions of the contract, then the arbitration provisions of the warranty do not mandate arbitration. Judge Sharp distinguished agreements where parties agree to arbitrate all disputes from arbitration clauses placed in a "separate warranty agreement and the warranty does not cover any of the disputes or claims." 739 So.2d at 1255. The majority errs by failing to construe the "arbitration of arbitrability" clause in the arbitration section of the warranty booklet as applying to warranty claims only. The Court of Appeals of New Mexico correctly decided this issue in interpreting these same HBW documents:
We acknowledge that the arbitration provision includes wording saying that claims, disputes and controversies arising from or related to the sale of the home, including any claim of breach of contract, and negligent or intentional misrepresentation, shall be submitted to arbitration. However, we are unpersuaded that these words should be read outside the warranty context or outside the rest of the language of the provision.
Campos v. Homes By Joe Boyden, L.L.C., 140 N.M. 122, 140 P.3d 543, 546 (2006).
There is nothing "clear and unmistakable" about this agreement to arbitrate arbitrability. I do not know why the Rosario court did not look beyond the language of the "arbitration of arbitrability" phrase in the Mercedes documents, but if they had, I am certain they would agree that an agreement to arbitration of arbitrability is limited to the warranty in which it is located.
A more correct resolution of this case may also be found in the Florida Supreme Court's decision, Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla.1999).[6] There the court had to decide the arbitrability of a tort claim against a home builder for the negligent design and construction of an air conditioning system that pulled in carbon monoxide from the garage and distributed it throughout the house, causing personal injury to the owner. The Seifert court found that this was not an arbitrable claim under the agreement that broadly called for arbitration of any claim "arising under or related to this Agreement or to the Property. . . ." The court observed that the duty of reasonable care at issue was a duty owed generally to anyone who might foreseeably be injured, not just the other contracting party. Thus, the tort claim was not covered by the arbitration provision in the contract for the purchase and sale of the home. The Seifert court specifically observed that this issue could interchangeably be viewed either as whether a valid agreement to arbitrate existed, or whether the tort claim was covered by the arbitration provision. Id. at 636, n. 2. The court said that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate, and proceeded to decide the issue as a matter of law. Id. at 636.
When these three complex documents comprising the agreement are viewed together, the conclusion is inescapable that what the documents say  certainly what a *20 consumer like Mr. Colon would understand  is that the arbitration provisions in the warranty apply only to warranty issues and that a claim outside the warranty is a claim outside of arbitration. If it were not for the single word "including" in the middle of the lengthy arbitration provision, contained on page 6 of the thirty-one page warranty booklet, that Mr. Colon impliedly agreed to by signing the "application for home enrollment," which incorporated the booklet by reference, Mercedes would have no argument at all. As a matter of contract interpretation, any doubt about whether the arbitration provision in the warranty has any application to non-warranty claims should be resolved against the drafters of the form. At least one state supreme court has found the HBW documents to be procedurally and substantively unconscionable and therefore entirely unenforceable. Burch v. Second Judicial District Court, 118 Nev. 438, 49 P.3d 647 (2002).
I am very impressed that the trial judge in this case, Judge Moxley, figured out what was happening here instantly. Basically, he told the attorney for Mercedes that if it was Mercedes' intention to ask the arbitrator to throw out the personal injury claim on the basis that the warranty documents constituted a waiver of any personal injury claim, he would not send it to arbitration because he believed that was an issue for him to determine judicially. Mercedes' lawyer would not deny that was the intention, and Judge Moxley refused the referral.
I stand with Judge Moxley. What we have begun to see is that virtually all consumer transactions, no matter the size or type, now contain an arbitration clause. And with every reinforcing decision, these clauses become ever more brazenly loaded to the detriment of the consumer  who gets to be the arbitrator; when, where, how much it costs; what claims are excluded; what damages are excluded; what statutory remedies are excluded; what discovery is allowed; what notice provisions are required; what shortened statutes of limitation apply; what prerequisites even to the right to arbitrate are thrown up  not to mention the fairness or accuracy of the decision itself. The drafters have every incentive to load these arbitration clauses with such onerous provisions in favor of the seller because the worst that ever happens, if the consumer has the resources to go to court, is that the offending provisions are severed. The state courts, demoralized by the United States Supreme Court's disapproval, have too often allowed these overreaching provisions to succeed. Most consumers can't read them, won't read them, don't understand them, don't understand their implication and can't afford counsel to help them out.
It is the role of the state courts to determine whether an arbitration provision is unconscionable and it is time that we take that responsibility seriously. One commentator famously remarked that the United States Supreme Court's complete embrace of arbitration would allow "birds of prey" to "sup on workers, consumers, shippers, passengers and franchisees."[7] The decision in this case shows that the prediction was correct. But the state courts and state legislatures are not as helpless as we appear.
Because Mr. Colon raised generally the issue of the unconscionability of the CAS arbitration clause, the majority's decision *21 to reverse the trial court's decision should, at the very least, include a remand to the trial court to examine and rule on this issue. That is what the Second District Court of Appeal did in Kel Homes, LLC v. Burris, 933 So.2d 699 (Fla. 2d DCA 2006). There, faced with an attack on an arbitration clause specifying "CAS" as the arbitrator and containing similarly overreaching provisions, the court remanded for further proceedings to "develop" the issue of invalidity of the arbitration clause. Even in the Rosario case, the trial court said that the validity of the arbitration clause was for the court to determine. It found that the trial court had implicitly determined the provision to be valid only because the trial court had enforced the agreement in part. Here, the trial court refused to enforce the agreement at the first hearing on grounds the majority now reverses. We should send this case back for further proceedings to develop the issue of invalidity of the arbitration clause in its entirety based on unconscionability.
The trio of documents at issue in this case offer a wealth of procedural and substantive unconscionability issues. Procedurally, the buyer is told when first contracting to purchase a subsequently-to-be-built home that Mercedes is "enrolled" in the HB VI Asset Protection Program (APP) provided by Home Buyers Warranty Corporation VI, but that the specific coverage of this warranty will be contained in the application and "Warranty Booklet," which are to be supplied later. There is no arbitration provision in the contract for purchase of the home itself. The application and warranty booklet are not presented until after the home has been completed. The entire structure of the transaction appears contrived and calculated to mislead. The fact that there is no explanation of the implications of these documents for non-warranty issues reinforces that concern.
Substantively, the arbitration clause presents many issues. First, and most obviously, an arbitration clause placed in a warranty booklet that purports to extend beyond issues pertaining to the warranty, as this one does, is deceptive. Second, the selection of CAS as the arbitrator warrants investigation to ascertain its economic relationship with Home Buyers Warranty Corporation and the construction industry and to examine its partiality. The fact that HBW can, in its sole discretion, select any other arbitration service it chooses is worrying. Also, CAS can manipulate the governing rules by selecting unilaterally when to demand arbitration. The documents also allow the builder to litigate freely with the consumer and then to switch to arbitration, as and when it chooses, because the buyer expressly waives his right to assert the seller's waiver of arbitration.[8] The clause even provides that to the extent any rule of whatever arbitration service it, in its sole discretion, selects is in conflict with any state or local law, ordinance or judicial rule, the arbitration rule supersedes.
Finally, there is the cost of arbitration. Under the documents, the homebuyer essentially agrees to bear administrative costs and arbitrator fees equally with the builder. The expenses of a private arbitration can be enormous. This provision alone may discourage or even prevent the *22 consumer from pursuing any claim, warranty or non-warranty.
I suppose the case of Luis Colon tripping over badly laid sod in his yard in Rockledge, Florida, does not offer a very compelling scenario, but imagine instead a badly hung chandelier falling on the head of some prominent person in Washington, D.C., injuring him severely. I would love to be in the room when it was explained to him that he had given up any claim for compensation for his injuries by buying a house with a HBW VI express limited warranty; and if he did not believe this to be the law, Mr. Harvy Short, a construction arbitrator with over twenty years' experience in residential roofing, would be happy to explain it to him.
I vote to affirm.
NOTES
[1] This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).
[1] The trend in the decisions of the recent and current United States Supreme Court to displace litigation with arbitration and to immunize it from any regulation on the part of state courts or state legislatures is well described by academics in tones of increasing alarm. See, e.g., Andrew M. Siegel, The Court Against the Courts: Hostility to Litigation as an Organizing Theme in the Rehnquist Court's Jurisprudence, 2006 Tex. L.Rev. 1097, 1139-46 (2006); Margaret L. Moses, Statutory Misconstruction: How the Supreme Court Created a Federal Arbitration Law Not Enacted by Congress, 34 Fla. St. U.L.Rev. 99 (2006).
[2] I do, however, reproduce the arbitration clause in its entirety in footnote 3, and it should be carefully read.
[3] This is the arbitration clause contained in the warranty booklet:

ARBITRATION Any and all claims, disputes and controversies by or between the Homeowner, the Builder, HBW VI, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim or breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS") in effect at the time of the request for arbitration, or by such other arbitration service as HBW VI shall, in its sole discretion select, and pursuant to the rules of that arbitration service in effect at the time of the request for arbitration. This arbitration agreement shall inure to the benefit of, and be enforceable by, the Builder's subcontractors, agents, vendors, suppliers, design professionals, insurers and any other person whom the homeowner contends is responsible for any defect in or to the subject Home or the real property on which the subject Home is situated. Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration agreement, and the arbitrator shall have sole authority to award such fees and costs. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction. This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of the arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.
The initiation of or participation by any party in any judicial proceeding concerning this arbitration agreement or any matter arbitrable hereunder shall not be deemed a waiver of the right to enforce this arbitration agreement, and notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this arbitration agreement.
Any party who shall commence a judicial proceeding concerning a dispute which is arbitrable hereunder shall also be deemed to be a party requesting arbitration within the meaning of this arbitration agreement. The administrative fee charged by the arbitration service shall be borne equally between the Homeowner and the Builder in the case of the Builder's One Year Workmanship/Two Year Systems Warranty Coverage. The administrative fee charged by the arbitration service will be paid by HBW VI in the case of single-arbitrator Structural Defect arbitrations. The administrative fee charged by the arbitration service will be paid by the Builder in the case of a dispute between the Builder and/or HBW VI. The arbitrator's compensation fee shall be borne equally by the arbitrating parties for single-arbitrator arbitrations. Additional fees may be assessed in accordance with the arbitration rules and fees.
HBW VI shall have the right, in advance of the arbitration proceeding, to reinspect any Home which is the subject of the arbitration proceeding if the request for arbitration was made more than sixty (60) days following the last claim decision of HBW VI concerning such Home. No arbitration proceeding shall involve more than one single-family detached dwelling or more than one multi-family building.
The parties expressly agree that this Warranty and this arbitration agreement involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule; and to the extent that any state or local law, ordinance or judicial rule shall be inconsistent with any provision of the rules of the arbitration service under which the arbitration proceeding shall be conducted, the latter rules shall govern the conduct of the proceeding.
If any provision of this arbitration agreement shall be determined by the arbitrator or by any court to be unenforceable or to have been waived, the remaining provisions shall be deemed to be severable there from and enforceable according to their terms.
[4] First Options v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
[5] Mercedes Homes, Inc. v. Rosario, 920 So.2d 1254 (Fla. 2d DCA 2006).
[6] Admittedly, the application of Seifert in light of Sears Authorized Termite and Pest Control, Inc. v. Sullivan, 816 So.2d 603 (Fla.2002), is difficult. Perhaps the court in Sears was saying that the two cases differed because, unlike Seifert, the exterminator would have had no general duty to kill spiders in the absence of the contract.
[7] Andrew M. Siegel, The Court Against the Courts: Hostility to Litigation as an Organizing Theme in the Rehnquist Court's Jurisprudence, 2006 Tex. L.Rev., n. 1 at 1141, n. 172, quoting Paul D. Carrington & Paul H. Haagen, Contract and Jurisdiction, 1996 Sup.Ct. Rev. 331, 401.
[8] Apparently, the various provisions relating to "Rules" in this arbitration clause are more important than would appear. The seller's right to choose the rules of the arbitration and the seller's opportunity to impact the rules is one of the most useful means available to the seller to enhance the "one sidedness" of arbitration in his favor. See W. Mark C. Weidemaier, The Arbitration Clause in Context: How Contract Terms Do (and do not) Define the Process, 40 Creighton L.Rev. 655 (2007).