DAMOORGIAN, J.
 

 Ballenlsles Country Club, Inc., Lee Adler, Edward Slotnick, Harold Danen-berg, Ballenlsles Community Association, Inc., Roma Josephs, Irwin Meltzer, Joel Margolies, Alvin Smith, and Robert Kap-lan appeal the non-final order denying their motions to compel arbitration against Dexter Realty d/b/a Ballenlsles Realty. We reverse.
 

 Dexter Development Corporation (a non-party to this action) developed Balle-nlsles, a community of residential units and a country club. Ballenlsles Country Club, Inc. (BICC) was established to own and operate the country club. Ballenlsles Community Association, Inc. (BICA) is the homeowner’s association for the community.
 

 BICC is governed by a board of directors. According to its by-laws, BICC’s board would initially consist of three directors appointed by Dexter Development. It would later expand to seven members, divided between representatives of Dexter Development (“company representatives”) and representatives of BICC (“member representatives”). Over time, Dexter Development’s representation on the Board would decrease and ultimately cease. Dexter Development has not had any representation on the Board since January 10, 2005.
 

 On March 19,1999, Dexter Development and BICC entered into a Subscription Agreement to pass title to, and control of, the community from Dexter Development to BICC and its equity members. The Subscription Agreement created a timeline for this process and designated the Turnover Date, which was the date when Dexter Development would convey, transfer, assign and deliver management and control of the club facilities to BICC.
 

 The Subscription Agreement contains two dispute-resolution sections. The first is entitled “DISPUTE RESOLUTION” and is contained in Section 40 of the Subscription Agreement:
 

 Each and every dispute, claim or other matter of disagreement concerning the rights, obligations or remedies of the Company and the Club or its members under this Agreement shall only be decided by arbitration, in accordance with the Dispute Resolution Procedure attached hereto as Exhibit “U”.
 

 The second, EXHIBIT U, sets forth both the scope of the arbitration clause and the arbitration procedure:
 

 EXHIBIT U
 

 DISPUTE RESOLUTION
 

 Each and every dispute, claim or other matter of disagreement concerning the rights, obligations or remedies of: (i)
 
 *651
 
 the Company and the Club or (ii) the Company and any members of the Club, under this Agreement or in any manner whatsoever related to or arising out of the Plan Documents, the ownership and operation of the Club Facilities, the ownership, operation of [sic] control of the Club, the offering of memberships in the Club, or the rights and privileges of members, shall only be decided by arbitration.
 

 ARBITRATION
 

 Either a majority of the Member Representatives (or the Club member(s), if the dispute is between Club member(s) and the Company) or a majority of the Company Representatives may submit the matter to binding arbitration. The arbitration shall consist of three arbitrators (the “Arbitration Panel”) (unless the parties mutually agree to only one arbitrator) as follows: the Company Representatives on the Club’s Board of Directors and the Member Representatives on the Board (or the Club members), as the case may be) shall each select one arbitrator ten days after receipt of notice by the other party invoking arbitration. The two arbitrators then shall jointly select the third arbitrator within ten days. All three arbitrators shall be required to be partners or principals of accounting, legal, consulting or engineering firms with experience in the country club industry. The decision of two of the three arbitrators shall be deemed to be the decision of the arbitrators and shall be binding on both parties as hereinafter provided.
 

 [[Image here]]
 

 ... The arbitration proceeding shall be governed by the rules of the American Arbitration Association then in force and shall take place in Palm Beach County, Florida, except as otherwise provided by Florida law. The prevailing party, as designated by the arbitrators, shall be entitled to recover all costs and reasonable attorney’s and paraprofessionals’ fees and related costs, fees or expenses of arbitration.
 

 In the event the Member Representatives (or the Club member(s), as the case may be) are the prevailing party, the Company shall be required to pay for all costs, fees and expenses incurred by both parties as a result of the arbitration and will not be entitled to pass on such costs, fees or expenses to the Club or its members.
 

 In the event the Company Representatives (or the Company) are the prevailing party and the losing parties are the Member Representatives on the Board, the Club shall be required to pay the costs, fees or expenses incurred by both parties as a result of the arbitration from its own funds through an assessment, that shall be levied against the Equity Members of the Club during the immediately following membership year. If the Company Representatives (or the Company) are the prevailing party and Club members are the losing party, the Club member(s) who were the losing party shall pay all of the costs, fees and expenses incurred by both parties as a result of the arbitration. The Club and the members will not be entitled to pass on such costs, fees, or expenses to the Company, notwithstanding the Company’s obligation to fund Operating Deficits prior to the Turnover Date. Any such costs, fees or expenses shall not increase the amount of any Operating Deficit of the Club or reduce the amount of any Excess Operating Funds of the Club.
 

 Dexter Realty, a real estate sales company affiliated with Dexter Development, was the exclusive realtor in the Ballenlsles community until 2005. Pursuant to a tem
 
 *652
 
 porary permit from the City of Palm Beach Gardens, Dexter Realty conducted its business from a sales center immediately adjacent to the PGA Boulevard entrance to Ballenlsles. The future zoning and use of the sales center was addressed in the Subscription Agreement and in the Membership Purchase Agreement, which was signed by each of the individually-named appellants.
 
 [1]
 
 In these agreements, the appellants agreed to consent to the rezoning and permanent permitting of Dexter Realty’s sales center for use as a real estate sales office.
 

 In May 2008, Dexter Realty filed a lawsuit against the appellants alleging that they had opposed its petition to amend the BICC Planned Community District to make permanent use of the PGA Boulevard sales center, contrary to the terms of the Subscription Agreement and the Membership Purchase Agreement. Dexter Realty is not a party to either agreement, but alleges that it is an intended third-party beneficiary of the agreements.
 

 The appellants moved to compel arbitration pursuant to the Subscription Agreement. The trial court denied the motion without making any findings of fact or conclusions of law. We review this ruling de novo.
 
 See United Healthcare of Fla., Inc. v. Brown,
 
 984 So.2d 588, 585 (Fla. 4th DCA 2008).
 

 “A court must compel arbitration where an arbitration agreement and an arbitrable issue exists, and the right to arbitrate has not been waived.”
 
 Miller & Solomon Gen. Contractors, Inc. v. Brennan’s Glass Co.,
 
 824 So.2d 288, 290 (Fla. 4th DCA 2002) (quoting
 
 Gale Group v. Westinghouse Elec. Corp.,
 
 688 So.2d 661, 663 (Fla. 5th DCA 1996)). Arbitration is a preferred method of dispute resolution, so any doubt regarding the scope of an arbitration clause should be resolved in favor of arbitration.
 
 Martha A. Gottfried, Inc. v. Paulette Koch Real Estate,
 
 778 So.2d 1089, 1090 (Fla. 4th DCA 2001).
 

 Arbitration clauses are construed according to basic contract interpretation principles.
 
 Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999). The plain language of the agreement containing the arbitration clause is the best evidence of the parties’ intent.
 
 Royal Oak Landing Homeowner’s Ass’n v. Pelletier,
 
 620 So.2d 786, 788 (Fla. 4th DCA 1993). The arbitration clause must be read together with the other provisions in the contract.
 
 See J.C. Penney Co. v. Koff,
 
 345 So.2d 732, 735 (Fla. 4th DCA 1977) (stating that a court must review the contract “without fragmenting any segment or portion”).
 

 This appeal deals with the narrow issue of whether the language in the procedural section of the arbitration clause in Exhibit U of the Subscription Agreement limits the scope of arbitrable issues to those that arose and were arbitrated while BICC’s board of directors still included company representatives.
 
 [2]
 
 The trial court ruled that the parties’ dispute, which arose after BICC took full control of the board, is not subject to the arbitration clauses because the arbitration procedure set forth in the Subscription Agreement cannot take place without any company representatives on the board. The appellants argue that the
 
 *653
 
 arbitration procedure does not limit the timeframe for arbitrable disputes.
 

 We hold that the plain language of both arbitration clauses in the Subscription Agreement shows that the parties intended for arbitration to apply to “each and every dispute” arising out of the Subscription Agreement, without time limitation. The use of the language “shall only be decided by arbitration” twice in the Subscription Agreement illustrates the parties’ intention that arbitration be the sole means for resolving disputes arising out of the Subscription Agreement and Membership Purchase Agreement. Nothing in the Agreement expressly limits the scope of arbitrable issues to those that were arbitrated while the board still included company representatives, and some of the obligations in the Agreement continue to exist after the transition of control, including the obligation that is in dispute in this case.
 

 The mere fact that the arbitration procedure that the parties selected cannot be implemented after all of the company representatives resigned from the board does not limit the broad scope of the arbitration clauses. The legislature provides courts with a procedure for selecting arbitrators should the parties’ agreed method fail for any reason:
 

 If an agreement or provision for arbitration subject to this law provides a method for the appointment of arbitrators or an umpire, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator or umpire who has been appointed fails to act and his or her successor has not been duly appointed, the court, on application of a party to such agreement or provision shall appoint one or more arbitrators or an umpire. An arbitrator or umpire so appointed shall have like powers as if named or provided for in the agreement or provision.
 

 § 682.04, Fla. Stat. (2009);
 
 see also New Port Richey Med. Investors, LLC v. Stern ex rel. Petscher,
 
 14 So.3d 1084, 1087 (Fla. 2d DCA 2009) (applying section 682.04 where the contract specified that the American Arbitration Association should arbitrate any dispute, but the AAA would no longer accept the type of dispute at issue).
 

 Dexter Realty cites
 
 Aberdeen Golf & Country Club v. Bliss Construction, Inc.,
 
 932 So.2d 235 (Fla. 4th DCA 2005), in support of its argument that the arbitration procedure limits the scope of the arbitration clauses in the Subscription Agreement. In
 
 Aberdeen,
 
 this Court distinguished between two general types of arbitration agreements.
 
 Id.
 
 at 236-37. The first type is “intended to operate as an irrevocable substitute for litigation in court” and survives full performance by one party, “leaving only the other party’s covenant for future dispute.”
 
 Id.
 
 at 236. This type is a “complete alternative” to court proceedings.
 
 Id.
 
 at 237. The second type is “intended as a means of postponing-even if not ultimately avoiding-litigation in court while the parties make progress toward their contractual goal.”
 
 Id.
 
 This type of clause appears frequently in contracts, such as commercial construction contracts, that are meant to govern the parties’ relationship while they proceed toward a single defined goal.
 
 Id.
 
 After the goal is reached, the arbitration clause no longer applies. Dexter Realty asserts that the Subscription Agreement is akin to a commercial construction agreement and that the arbitration clause in the Subscription Agreement was meant to apply only during the transition of control from Dexter Development to BICC.
 

 We conclude, however, that the arbitration clauses in the Subscription Agreement
 
 *654
 
 fall into
 
 Aberdeen’s
 
 first category. The broad language of these clauses shows that they were meant to operate as an irrevocable substitute for litigation in court and were meant to survive the transition of control of the country club, just as certain covenants in the Subscription Agreement and Membership Purchase Agreements survived that transition.
 

 Accordingly, we reverse. The trial court erred in denying the appellants’ motions to compel arbitration. On remand, the court should compel arbitration of this dispute and appoint an arbitrator or arbitrators pursuant to its authority under section 682.04.
 

 Reversed and Remanded.
 

 MAY and CIKLIN, JJ, concur.
 

 [1]
 

 . The Membership Purchase Agreement incorporates the arbitration provisions of the Subscription Agreement.
 

 [2]
 

 . There appears to be no dispute about Dexter Realty’s status as an intended third-party beneficiary to the Subscription Agreement and the Membership Purchase Agreement. Thus, it is bound by the arbitration clauses in those agreements.
 
 See Int’l Bullion & Metal Brokers, Inc. v.
 
 W.
 
 Pointe Land, LLC,
 
 846 So.2d 1276, 1277 (Fla. 4th DCA 2003).