TAYLOR, J.
The defendants-lessors appeal a non-final order denying their motion to compel arbitration in this trip and fall action brought against them by the plaintiff-lessee. We reverse, because the arbitration provision in the lease agreement expressly applies to negligence claims arising out of or related to the defendants’ Establishment. Thus the plaintiffs premises liability claims against the defendants are within the scope of the arbitration agreement.
In January 2010, the plaintiff, John Del-sordo, signed a lease to rent an apartment at Newport Place, an independent retirement living facility. The lease contained an addendum which provided for arbitration of disputes between the parties. The arbitration addendum provided that “any claim or dispute (including those based on contract, negligence or statute) amongst the Parties, involving an amount in excess of $15,000, arising out of or related to this Agreement, the Establishment or the services/care provided to the Resident, shall be resolved by binding arbitration....” The arbitration provision does not define the term “Establishment.”
Several months after becoming a resident of Newport Place, the plaintiff tripped and fell on the premises while walking on a catwalk that connected his apartment building to the dining room. As a result of his fall, the plaintiff fractured his shoulder.
The plaintiff sued the defendants. In the operative complaint, the plaintiff alleged that he was a resident of the community, that the defendants negligently maintained the catwalk, and that the defendants failed to warn him of a known dangerous condition on the catwalk.
In response to the plaintiffs lawsuit, the defendants made a special limited appearance and moved to compel arbitration, arguing that the dispute should be referred to arbitration pursuant to the terms of the arbitration addendum. The plaintiff filed a response to the motion to compel arbitration, arguing that the plaintiffs claim did not fall within the terms of the contract and that the arbitration agreement was unconscionable.
At a hearing on the defendants’ motion to compel arbitration, the court heard argument from the parties’ counsel and then took the matter under advisement. Subsequently, the trial court entered an order denying the defendants’ motion to compel. The court reasoned that the “plaintiffs claim does not arise out of the terms of the contract and is therefore not subject to arbitration.” This appeal ensued.
“In reviewing the denial of a motion to compel arbitration, the trial court’s factual findings are reviewed under a competent, *530 substantial evidence standard.” BDO Seidman, LLP v. Bee, 970 So.2d 869, 873 (Fla. 4th DCA 2007). However, appellate courts apply a de novo standard of review to a trial court’s conclusions regarding the construction and validity of an arbitration agreement. United Healthcare of Fla., Inc. v. Brown, 984 So.2d 583, 585 (Fla. 4th DCA 2008). As the trial court made no findings of fact and its ruling was based solely on its interpretation of the arbitration agreement, the proper standard of review is de novo.
There are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Florida public policy favors arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. Morales v. Perez, 952 So.2d 605, 607 (Fla. 3d DCA 2007). However, arbitration is favored only as to issues the parties have actually agreed to arbitrate. Citigroup, Inc. v. Amodio, 894 So.2d 296, 298 (Fla. 4th DCA 2005). No party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate. Steve Owren, Inc. v. Connolly, 877 So.2d 918, 920 (Fla. 4th DCA 2004).
The determination of whether an arbitration clause requires arbitration of a particular dispute necessarily rests on the intent of the parties. Seifert, 750 So.2d at 636. In ascertaining the parties’ intent, arbitration provisions are to be construed following general principles of contract interpretation. BallenIsles Country Club, Inc. v. Dexter Realty, 24 So.3d 649, 652 (Fla. 4th DCA 2009). “The plain language of the agreement containing the arbitration clause is the best evidence of the parties’ intent.” Id. Additionally, the arbitration clause must be read together with the other provisions in the contract. Id.
“Where the terms of a contract are clear and unambiguous, the parties’ intent must be gleaned from the four corners of the document.” Crawford v. Barker, 64 So.3d 1246, 1255 (Fla.2011). An ambiguous provision in a contract is to be construed against the drafter. City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000). However, “[a] true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations.” Am. Med. Int'l, Inc. v. Scheller, 462 So.2d 1, 7 (Fla. 4th DCA 1984). Accordingly, contractual language is ambiguous only if it is susceptible to more than one reasonable interpretation. See Penzer v. Transportation Ins. Co., 29 So.3d 1000, 1005 (Fla.2010). It thus follows that where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner. King v. Bray, 867 So.2d 1224, 1227 (Fla. 5th DCA 2004).
The Florida Supreme Court’s decision in Seifert is the seminal case on the issue of whether a claim is subject to arbitration. In Seifert, the plaintiff brought a wrongful death action against a home builder following her husband’s death in the home from carbon monoxide poisoning. 750 So.2d at 635. The arbitration clause in the contract for the purchase of the house provided that “[a]ny controversy or claim arising under or related to this Agreement or to the Property ... shall be settled and final *531 ly determined by ... binding arbitration. ...” Id. at 635.
After finding that the arbitration clause at issue in Seifert was a broad arbitration provision, the court explained that “[t]he test for determining arbitrability of a particular claim under a broad arbitration provision is whether a ‘significant relationship’ exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute.” Id. at 637-38. “[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one ‘arising out of or relating to’ the agreement.” Id. at 638. Rather, “for a tort claim to be considered ‘arising out of or relating to’ an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself.” Id.
The Seifert court held that the wrongful death tort claim did not have a sufficient relationship to the agreement as to require submission of the cause to arbitration. Id. at 642^43. Crucial to the court’s analysis, however, was that it would be unjust to require arbitration where there was no indication in the arbitration provision that tort claims arising under the common law were contemplated or included. Id. at 642. The court explained: “The absence of any mention of the parties’ rights in the event of personal injuries or death arising out of any alleged tortious conduct such as that which allegedly occurred in this case creates ambiguity and uncertainty as to the intent of the parties.” Id. at 641. Referring to the arbitration agreement as being part of a “commercial transaction,” the court stated that “in the absence of express language in the parties’ contract mandating arbitration of such disputes, we conclude that such a result is not required here.” Id. at 642.
Cases decided since Seifert have made clear that an arbitration agreement may be drafted to expressly mandate arbitration of tort claims. See Laizure v. Avante at Leesburg, Inc., 44 So.3d 1254, 1258 (Fla. 5th DCA 2010) (explaining that “Seifert did not hold that wrongful death claims are not arbitrable” and concluding that the plaintiffs wrongful death claim fell “squarely within” the language of an arbitration provision in nursing home resident agreement which broadly applied to any claim based on common law or statutory negligence); see also Mercedes Homes, Inc. v. Colon, 966 So.2d 10, 12 (Fla. 5th DCA 2007) (“By the terms of the arbitration agreement, the parties agreed to submit claims to arbitration that were far broader than claims made under the warranty agreement, as long as those claims related to the subject home or the real property.”).
In this case, the defendants have not waived the right to arbitration, so the issue boils down to whether the arbitration provision in question covers the tort action filed here. As noted above, the arbitration addendum provides that “any claim or dispute (including those based on contract, negligence or statute) amongst the Parties, involving an amount in excess of $15,000, arising out of or related to this Agreement, the Establishment or the services/care provided to the Resident, shall be resolved by binding arbitration....” (Emphasis added). Unlike the arbitration provision in Seifert which had no indication that it applied to independent tort claims, the arbitration agreement in the case at bar expressly applies to negligence claims. Moreover, in addition to applying to claims “arising out of or related to” the lease agreement, the arbitration provision also expressly applies to negligence claims aris *532 ing out of or related to “the Establishment or the services/care provided to the Resident.”
The parties disagree over the meaning of the term “Establishment.” The plaintiff argues that the term “Establishment” means “ruling class” or “controlling group” and therefore refers to “the folks running the retirement community.” Alternatively, the plaintiff suggests that the term “Establishment” is ambiguous and should be construed against the drafter of the contract. The defendants argue that “Establishment” means “place of business.” We agree with the defendants’ interpretation.
Black’s Law Dictionary defines the term “establishment” in three ways: 1) the act of establishing; the state or condition of being established; 2) an institution or place of business; or 3) a group of people who are in power or who control or exercise great influence over something. Black’s Law Dictionary (9th ed. 2009). Similarly, the Merriam-Webster Online Dictionary defines “establishment” in multiple ways, including (among others): a settled arrangement; an established church; a permanent civil or military organization; a place of business or residence with its furnishings and staff; a public or private institution; and an established order of society, such as (often capi-. talized) a group of social, economic, and political leaders who form.a ruling class. Merriam-Webster Online Dictionary, http://www.merriam-webster.com/ dictionary/establishment (last visited October 5, 2012).
In the context of the lease agreement, the term “Establishment” necessarily means “an institution or place of business.” While there are other dictionary definitions of the term “establishment,” none of those alternative definitions would make sense in the lease agreement. Contrary to the plaintiffs argument, the capitalization of the term “Establishment” in the lease did not mean that the term was referring to a “ruling class” or “the folks running the retirement community.” Many key terms in the lease were capitalized, so the capitalization of the term Establishment in the contract does not mean that the contract was referring to the “ruling class.”
The plaintiffs interpretation of the term “Establishment” is not a reasonable interpretation in light of the context in which the term was used in the lease. Indeed, if one were to insert the plaintiffs proposed definition of “Establishment” in the arbitration addendum, it would lead to a nonsensical reading: “any claim or dispute (including those based on contract, negligence or statute) amongst the Parties ... arising out of or related to this Agreement, [the ruling class] or the services/care provided to the Resident, shall be resolved by binding arbitration....” Because the plaintiffs interpretation of the term “Establishment” would be unreasonable and the defendants’ interpretation would be consistent with reason and probability, the contract should be interpreted in the rational manner urged by defendants. Thus, we conclude that the term “Establishment” in the arbitration agreement is unambiguous and means the defendants’ place of business.
In light of our interpretation of the term “Establishment,” we conclude that the plaintiffs negligence claims for his trip and fall on the defendants’ premises arise out of or relate to the defendants’ Establishment. The arbitration agreement expressly and unambiguously states that negligence claims arising out of or related to the defendants’ Establishment (i.e., place of business) are subject to arbitration. Therefore, the trial court erred in denying the motion to compel arbitration on the basis that the plaintiffs “claim does not arise out of the terms of the contract.” *533 We reverse and remand with directions that the case be submitted to arbitration.[1]

Reversed and Remanded.

WARNER and CONNER, JJ., concur.

. Because the plaintiffs answer brief did not include either an argument that the provision was unconscionable or a request that we remand for consideration of unconscionability in the event of a reversal, it would not be proper for us to remand for that purpose. Colon, 966 So.2d at 14.