GERBER, J.
An automobile dealership appeals from the circuit court’s order denying the dealership’s motion to stay litigation of a customer’s action against the dealership pending ‘ arbitration.[1] The customer’s action arose from and related to the dealership’s service upon a car which the customer purchased from the dealership eight months earlier. At the time of the purchase, the parties entered into an arbitration agreement applying to claims arising from or relating to any service. The court denied the dealership’s motion to stay litigation pending arbitration, because the court believed the arbitration agreement should not extend in ■ perpetuity after the purchase. We reverse, because no legal basis existed for the court to ignore the arbitration agreement’s plain and unambiguous terms. '

The Circuit Court Proceedings

The customer’s amended complaint alleged as follows. [1] Eight.months after he purchased .the . car from the dealership, he brought the car to the dealership for warranty work. Two weeks later, when he picked up the car after the completed work, he noticed that the car had damages which did not exist when he delivered the car to the dealership for the work. The dealership also gave him an invoice showing that a dent eliminator company. had worked on the car without his knowledge. He asked the dealership about the damages to his car. At first, the dealership denied any damage occurred to his car during the warranty work. However, when he confronted the dealership with the invoice showing that a dent eliminator company worked on his car, the dealership *458 admitted that one of the car’s doors was damaged during the warranty work. He then obtained from the dent ‘ eliminator company an invoice showing that the comr pany actually had worked on two of the ear’s doors. He took his car to another repair company and obtained an estimate to repair the damages which remained even after the dealership repaired the doors. However, the dealership refused to pay for those repairs.
The customer’s amended complaint alleged six counts: (1) AutoNation Ford’s bailee negligence; (2) AutoNation’s negligence by agency; (3) AutoNation Ford’s violation of the Florida Motor Vehicle Repair Act’s prohibition of unlawful acts and practices, § 559.920, Fla. Stat. (2015); (4) AutoNation’s violation, of § 559.920, Fla. Stat. (2015); (5) AutoNation Ford’s violation of the Florida Deceptive and Unfair Trade Practices Act’s prohibition of unlawful acts and practices, § 501.204, Fla. Stat. (2015); and (6) AutoNation’s violation of § 501.204, Fla. Stat. (2015).
The dealership filed a motion to stay litigation pending arbitration. The dealership relied upon the parties’ arbitration agreement, which provides, in pertinent part:
This Arbitration Agreement (“Agreement”), applies to Customer(s) (“you”) who is/are in the process of: (1) purchasing ... a vehicle(s) ...; (2) servicing any vehicle(s) with the Dealership; and (3) reviewing negotiating or executing any documents or agreements during the’ course of interactions with the Dealership ’ (collectively, “Customer(s)/Dealership Dealings”). You and the’ Dealérship agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively “Claims”) that either Party has arising from Customer(s)/Dealership Dealings. Such Claims include, but are not limited to, the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) Claims relating to any representations, promises, undertakings, warranties, covenants or service; (3) Claims regarding the interpretation, scope, or validity of this Agreement or arbitrability of any issue; (4) Claims between you and the Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties, who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings.
According to the dealership, pursuant to the arbitration agreement’s express terms, because all of the customer’s claims arose from and related-to the dealership’s service of his car, all of the customer’s claims had to be submitted to arbitration.
In response to the dealership’s motion, the customer argued that his claims arose from the dealership’s negligence and misrepresentations and not from the dealership’s service of his car.
After a hearing, the circuit court entered an order denying the dealership’s motion. The court found that the arbitration agreement executed at the time of the car’s purchase did not extend to cover the dealership’s service eight months later. The court reasoned:
It’s hard for me to believe that this arbitration clause ... lasts in perpetuity forever.... What I think you’re going to do is discourage people from servicing their cars....

*459
The Arguments on Appeal and Our Analysis

This appeal followed. The dealership raises two arguments: (1) the court erred in denying the motion based on its “perpetuity” conclusion which the customer did not raise and which was incorrect as a matter of law; and (2) the court should have granted the motion because the customer’s claims fall within the arbitration agreement’s scope.
Our review is de novo. See BKD Twenty-One Mgmt. Co. v. Delsordo, 127 So.3d 527, 530 (Fla. 4th DCA 2012) (“[A]ppellate courts apply a de novo standard of review to a trial court’s conclusions regarding the construction and validity of an arbitration agreement. As the trial court made no findings of fact and its ruling was based solely on its interpretation of the arbitration agreement, the proper standard of review is de novo.”) (internal citation omitted).
Moreover, as we acknowledged in BKD: “Florida public policy favors arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration.” Id. (citation omitted).
With that standard of review in mind, we agree with the dealership’s arguments. We address each in turn.
1. The Circuit Court’s “Perpetuity” Conclusion '
On the dealership’s first argument, we agree that the court’s denial of the motion based on its “perpetuity” conclusion was incorrect as a matter of law. We recognize that a contract for an indefinite period generally is not deemed to be perpetual. See Perri v. Byrd, 436 So.2d 359, 361 (Fla. 1st DCA 1983) (“The general rule is that a contract which contains no express provision as to duration, or which is to remain in effect for an indefinite period of time, is not deemed to be perpetual— ”). Instead, the law generally imposes a “reasonableness” standard upon a contract for an indefinite period. See, e.g., Indep. Mortg. & Fin., Inc. v. Deater, 814 So.2d 1224, 1225 (Fla. 3d DCA 2002) (“Where an agreement does not specify the time for payment or provides for an indeterminate or indefinite time, the law implies that payment will be made within a reasonable time.”); § 672.309(2), Fla. Stat. (2015) (“Where the contract provides for successive performances but is indefinite in duration[,] it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.”).
Here, the reasonable time for the arbitration agreement’s duration is the duration of the parties’ relationship over the car at issue. That relationship existed when the customer brought the car to the dealership for service eight months after the time of the, purchase. Despite the circuit court’s personal view that the arbitration agreement not last “in perpetuity forever,” the court was not authorized to rewrite the arbitration agreement based upon its personal view and thereby deprive the dealership of its contractual rights. See Barakat v. Broward Cty. Hous. Auth., 771 So.2d 1193, 1195 (Fla. 4th DCA 2000) (“It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain.”) (citation omitted).
2. The Arbitration Agreement’s Scope
On the dealership’s second argument, we agree that the customer’s claims fall within the arbitration agreement’s scope. As our supreme court held in Jackson v. Shakespeare Foundation, Inc., 108 So.3d 587 (Fla.2013):
An arbitration provision that is considered to be narrow in scope typically requires arbitration for claims or contro *460 versies “arising out of’ the subject contract. This type of provision limits arbitration to those claims that have a direct relationship to a contract’s terms and provisions. In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies “arising out of or relating to ” the subject contract. The addition of the words “relating to” broadens the- scope of an arbitration provision to include those claims that are described as having a “significant relationship” to the contract-regardless of whether the claim is founded in tort or contract law.
Id. at 593 (internal citations omitted).
Applying our supreme court’s guidance here, we hold that the customer’s claims arising from and relating to the dealership’s service on his car' fall within the arbitration agreement’s scope. The arbitration agreement’s plain and unambiguous terms provide:
This Arbitration Agreement (“Agreement”), applies to Customer(s) (“you”) who is/are in the process of: (1) purchasing ... a vehicle(s) ...; (2) servicing any vehicle(s) with the Dealership; and (3) reviewing, negotiating or executing any documents or agreements during the course of interactions with the Dealership (collectively, “Customer(s)/Dealership Dealings”). You and the Dealership agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively “Claims”) that either Party has arising from Customer(s)/Dealership Dealings, Such Claims include, but are not limited to, the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) Claims relating to amy representations, promises, undertakings, warranties, covenants or service; (3) Claims regarding the interpretation, scope, or validity of this Agreement or arbitrability of any issue; (4) Claims between you and the Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties, who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings.
(emphasis added).
Even if we were to be tempted by the customer’s argument that the dealership’s alleged negligence and misrepresentations did not arise from or relate to the dealership’s service on his car, the arbitration agreement’s “catch-all” categories .. of claims • “arising from Customer(s)/Dealership Dealings,” or “regarding the interpretation, scope, or validity of this Agreement or arbitrability of any issue,” compel arbitration of the customer’s claims.
. Conclusion
Based on the foregoing, we reverse the circuit court’s order and remand for the court to stay litigation of the customer’s action against the dealership pending arbitration. We conclude without further discussion that the customer’s other arguments for affirming the circuit court’s order lack merit.

Reversed and remanded to stay the action pending arbitration.

MAY and FORST, JJ.,. concur.

. We have jurisdiction over the appeal from this non-final order pursuant to Floridh Rule of Appellate Procedure 9.130(a)(3)(C)(iv) (2016) ("Appeals to the district courts of appeal of non-final orders [include] those that ... determine ... the entitlement of a party to arbitration....”).