# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00008-SCT

*MARK ALBERT, INDIVIDUALLY AND AS*
*REPRESENTATIVE OF THE WRONGFUL*
*DEATH BENEFICIARIES OF KYLA ALBERT,*
*DECEASED*

*v.*

*SCOTT'S TRUCK PLAZA, INC., INCORRECTLY*
*NAMED AS RONNY HUDDNAL AND DOROTHY*
*HUDDNAL, A PARTNERSHIP, DOING BUSINESS*
*AS SCOTT'S AMOCO, LONGSPUR, L.P., AND*
*BURNS AND BURNS, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 11/27/2006 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY DEAN LEATHERS |
| ATTORNEYS FOR APPELLEES: | JAMES RYAN PERKINS |
| | J. WYATT HAZARD |
| | CAROLYN CURRY SATCHER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 02/28/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     In this wrongful-death case, Kyla Albert, Mark Albert's wife, was struck and killed

while crossing a public roadway en route from Scott's Truck Plaza to the gravel parking area

across the road where her truck was parked.  Mark Albert ("Plaintiff") filed suit against

Scott's Truck Plaza; Longspur, L.P., the owner of the property upon which Scott's Plaza was situated; and Burns and Burns, Inc., the provider of the gas and gas equipment, (collectively, "Defendants") for failure to keep the premises in a reasonably safe condition and failure to warn of the unsafe condition concerning the public roadway. The Circuit Court of Lauderdale County granted summary judgment in favor of the defendants. The dispositive premises-liability question is whether Defendants owed a duty to Kyla Albert at the time she was fatally injured while crossing a public highway abutting the truck stop. We affirm the trial court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.    Appellant Mark Albert was a truck driver. His wife, Kyla Albert, accompanied him on trips. On December 9, 2002, during a working trip, the Alberts stopped at Scott's Truck Plaza in Meridian, Mississippi, for breakfast. They parked the truck in a gravel lot on the west side of Russell Mt. Gilead Road. Scott's was across the road on the east side. The Alberts ate inside the truck stop. While crossing Russell Mt. Gilead Road to return to the truck, Kyla Albert was struck and killed by a vehicle driven by Terra Lanterman McDonald. The accident occurred about 5:08 a.m., while it was still dark outside.

¶3.    Mark Albert filed a wrongful-death suit against McDonald; Longspur, L.P., the landowner and lessor of the truck stop;[1] and Ronny and Dorothy Huddnal, the operating

---

[1]The Huddnals rented the premises on which the truck stop was located from Longspur; however, there was no written lease agreement.

partners and lessees of the truck stop.[2] Mark Albert alleged that Scott's acted negligently in that it: (1) failed to provide adequate lighting; (2) placed a propane tank and advertising in its parking lot, which obstructed the view of pedestrians and drivers of oncoming traffic; and (3) failed to warn of hidden dangers. He alleged that these failures amounted to a breach of the business's duty to provide reasonably safe premises.

¶4. Defendants filed for summary judgment. The trial court granted summary judgment as to all defendants on November 27, 2006, finding that Albert failed to produce evidence which would establish a genuine issue of material fact concerning (1) whether the propane tank, advertising or alleged inadequate lighting was a proximate cause of the accident; or (2) whether the Defendants had a duty to provide adequate lighting or warn the decedent of the dangers associated with crossing Russell Mt. Gilead Road. From this judgment, Albert filed a notice of appeal.

## DISCUSSION

¶5. This Court employs a de novo standard in reviewing a trial court's ruling on a motion for summary judgment. *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 (Miss. 2007). Such review entails examination of all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. *Id.* The evidence must be viewed in the light most favorable to the non-movant. *Id.* The movant

---

[2] Mark Albert reached a settlement agreement with McDonald which resulted in McDonald's release. Additionally, Burns and Burns, Inc., though not named in the style or the substance of either complaint, subsequently was added as a defendant. Burns sold gasoline to the truck stop and provided the gasoline-dispensing equipment.

3

bears the burden of showing that no genuine issue of material fact exists. *Id.* The existence of a genuine issue of material fact will preclude summary judgment. *Massey v. Tingle*, 867 So. 2d 235, 238 (Miss. 2004). "The non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial." *Id.* (citing *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997)). *See also Mayfield v. The Hairbender*, 903 So. 2d 733, 735 (Miss. 2005) (same); *KBL Props., LLC v. Bellin*, 900 So. 2d 1160, 1163 (Miss. 2005) (same).

¶6.     Summary judgment is mandated where the non-movant fails to establish the existence of an essential element of that party's claim. *Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, at *6 (Miss. 2007) (citing *Galloway Travelers Ins. Co.*, 515 So. 2d 678, 683 (Miss. 198)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265(1986))). Mark Albert claims the defendants were negligent. Thus, for Mark Albert's claim to survive summary judgment, he must have set forth specific facts sufficient to establish the existence of each element of negligence – duty, breach, causation and damages. *Simpson v. Boyd*, 880 So. 2d 1047, 1050 (Miss. 2004).

¶7.     For a premises-liability claim, as in this case, duty is contingent on the status of the injured person. Thus, the first step in determining duty is to identify the status of the injured at the time of the injury. *Massey*, 867 So. 2d at 239. Mississippi adheres to the invitee/licensee/trespasser trichotomy when analyzing the property owner's duty of care. *Corley v. Evans,* 835 So. 2d 30, 37 (Miss. 2003) (citing *Hudson v. Courtesy Motors, Inc.* 794 So. 2d 999 (Miss. 2001)). This Court has described the distinction, stating:

4

As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right.

*Holley v. Int'l Paper Co.*, 497 So. 2d 819, 820 (Miss. 1986) (internal citations omitted).

"The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law." *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 763 (Miss. 1989) (citing *Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.*, 518 So. 2d 646, 648 (Miss. 1988); *Adams v. Fred's Dollar Store*, 497 So. 2d 1097, 1100 (Miss. 1986)).

¶8.     It is undisputed that Kyla Albert was an invitee when she was upon the premises of the truck stop. The issue this Court must resolve is whether Kyla Albert retained that invitee status upon entering the public roadway.

¶9.     Scott's argued in its motion for summary judgment that "[Kyla] Albert's status as an invitee was lost as she entered Russell Mt. Gilead Road . . . ." Mark Albert claimed he would show that "the parking lot across the road from the restaurant was an integral part of Defendant's business and therefore, the decedent, in the moments immediately prior to crossing the road and [while] crossing the road itself, was a business invitee of [Scott's]."

¶10.    Mark Albert asserts that Kyla Albert retained her status as an invitee of Scott's while walking across the street, since the gravel area was an integral part of Scott's business. Indeed, a "tenant/lessee/occupier of premises owes a duty of reasonable care to its invitees

5

for the demised property and such *necessary incidental areas substantially under its control . . . .and which he invites the public to use.*" **Wilson v. Allday**, 487 So. 2d 793, 798 (Miss. 1986) (emphasis added). However, this Court finds that Mark Albert failed to set forth specific facts sufficient to establish that the gravel area across Russell Mt. Gilead Road was an integral part of Scott's business. Mark Albert merely directs the Court to deposition testimony in which Dorothy Huddnal of Scott's and Dale Burns of Longspur and Burns and Burns admitted to knowing that patrons sometimes park across the road. Knowledge of patrons' occasional use of the gravel area was insufficient to show that the area was a "necessary incidental area substantially under [the defendants'] control." Albert likewise failed to show that the defendant invited the public to use the gravel area across the road. Therefore, Plaintiff was unable to establish a question of fact as to whether Defendants owed any duty to Kyla Albert after she left their premises and entered the public roadway, where she was fatally injured.

¶11. Establishing the status of the injured party is the first step in determining the property owner's or lessee's duty. Unable to accomplish this first step, Albert failed to establish the existence of a duty under the premises liability theory. Therefore, the inquiry of this Court is complete. The trial court properly granted summary judgment for the defendants.[3]

---

[3] This Court notes that the trial court also addressed the issue of proximate cause raised by the parties during summary judgment proceedings. The trial court found that Mark Albert failed to prove either that the alleged obstructions were a proximate cause or that the lighting was insufficient on the premises. The court further found that the danger of crossing a public roadway was not hidden but open and obvious, thus requiring no warning. Since this Court finds no genuine issue of material fact as to whether Defendants owed a duty, it is unnecessary to address the trial court's findings concerning causation.

6

¶12.	Mark Albert failed to set forth specific facts sufficient to establish by affidavit, deposition, interrogatories, or other means acceptable for summary judgment purposes that there is a genuine issue of material fact as to whether the defendants owed a duty to Kyla Albert when she was fatally injured. Duty is an essential element of a negligence claim. Since summary judgment is mandated where the non-movant fails to establish the existence of an essential element of that party's claim, summary judgment was appropriate in this case. The judgment of the Circuit Court of Lauderdale County is affirmed.

¶13.	**AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, J., DISSENTS WITH SEPARATE OPINION JOINED BY DIAZ, P.J.; EASLEY, J., JOINS IN PART.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶14.	The majority acknowledges that "Kyla Albert was an invitee when she was upon the premises of the truck stop." (majority opinion at paragraph 8). The majority then frames the issue as "whether Kyla Albert retained that invitee status upon entering the public roadway[,]" (majority opinion at paragraph 8) and ultimately affirms the lower court's grant of summary judgment for the defendants, finding that she did not. No disagreement lies regarding duty preceding Kyla Albert's entry onto the public roadway. However, by narrowly framing the issue, the majority fails to consider whether the duty was breached preceding Kyla Albert's entry onto the road, which proximately caused or contributed to the

accident and her death. The trial court also failed to consider the aforementioned, but its error is compounded by concluding that neither the propane tanks nor inadequate lighting were the *proximate cause* of her death. In so doing, the lower court contravened the stated policy of this Court that:

> [a]ll motions for summary judgment *should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion*. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.

*Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So. 2d 431, 433 (Miss. 1988) (citing *Ratliff v. Ratliff*, 500 So. 2d 981, 981 (Miss. 1986)) (emphasis added). While summary judgment is a necessary and useful tool in an increasingly litigious society, that instrument must be exercised cautiously. *See Mink*, 537 So. 2d at 433 (citation omitted) ("[s]ince a summary judgment serves to effectively terminate a lawsuit, they should only be 'granted with great caution.'"). Moreover, "*[t]he party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists*, and that they are, based on the existing facts, entitled to judgment as a matter of law." *Daniels v. GNB, Inc.*, 629 So. 2d 595, 600 (Miss. 1993) (citing *Skelton v. Twin County Rural Elec.*, 611 So. 2d 931, 935 (Miss. 1992)) (emphasis added). Erring on the side of caution, it is my opinion that sufficient proof was offered, when viewed in the light most favorable to Albert, evidencing genuine issues of material fact to be decided by a jury regarding whether inadequate lighting and/or visual obstructions located on the premises were contributing factors to Kyla Albert's death.

8

¶15.    In his deposition, Mark Albert, the decedent's husband, stated the parking lot on the Scott's side of Russell Mt. Gilead Road was full when he arrived.  Therefore, he parked across the road, alongside three other trucks, as he had done on previous occasions.  The deposition testimony of Henry Dale Burns, Jr., the general partner of Longspur, was that the area across the street from Scott's, owned by Burns Family Properties, "occasionally" had trucks parked there.  Likewise, Terra Lanterman McDonald, the driver in the accident, testified that:

> [t]here was trucks that parked across the road from the truck stop, and probably in all the years I've been driving I just never happened to come through there when there was somebody crossing across, maybe a few times. But I did know that there was trucks parked across the road from the truck stop.

Dorothy Nell Huddnal, operating partner and lessee of Scott's, acknowledged that some tractor-trailers would park across the road.[4]  Nonetheless, Huddnal denied that Scott's had any obligations or duties pertaining to that area.[5]

---

[4]Huddnal also testified that the majority of tractor-trailers which stayed in the lot across the road would do business with Scott's.  However, she qualified her testimony, noting that "[i]t probably happened within the last year or so[,]" as "they just started doing that on their own[,]" and business did "not really" pick up as "[i]t was about the same still."

[5]According to the deposition testimony of Burns, Jr., the Huddnals were responsible for "[w]hatever equipment they had in that building[,]" while Longspur was responsible for the four outer walls and the roof.  This largely comported with the deposition testimony of Hudnall, who stated:

> [a]s far as all of the inside, we did all of the maintenance, *changing lights out*, and stuff like that.  Or if we had a problem with the commodes, . . . if we could handle it, we did that.  If not, we reported it to Longspur.  And as far as . . . the canopy lights, we called Longspur and reported that and they would come and . . . change out the light.  Or if we had any problem with the pumps and as far as like CAT scales, . . . we would call them . . . .

¶16. According to the accident report, the area of impact occurred north of the propane tanks. If the accident report was correct, Kyla Albert entered the road to access the unpaved parking area from behind the propane tanks immediately before being struck. Although Mark Albert conceded in his deposition that one step beyond the tanks would not put an individual in the roadway, he noted that there are scenarios where the propane tanks "could *possibly* block" one's vision of the roadway. (Emphasis added). As Albert argued in his Response to Scott's Motion for Summary Judgment:

> the mere fact of a seventeen and a half (17 ½) foot space between the propane tank and the road does not imply a lack of obstruction to view in respect to motorists or pedestrians. This amount of space has a varying effect and therefore is not determinative of visual ability when considering the distance from the tank of a pedestrian and/or motorist, angles of sight, and speed of a vehicle.

McDonald recalled "a liquid petroleum gas thing there . . . by the road . . . ."

¶17. Regarding the inadequate lighting issue, Huddnal testified that there were between ten and twelve security lights on the lot, erected prior to 1984 by East Mississippi Power Association ("EMPA"). According to her, Scott's paid a monthly fee to EMPA for those lights, and they were in good working order, along with the canopy lights under the gasoline and diesel islands, at the time of the accident. McDonald testified that Scott's itself is well-lit, "**but out by the road it's not**[,]" and the parking lot across the street "had either one or two night-lights." (Emphasis added). She testified that *while looking directly down the roadway*, she "*did not see [Kyla Albert]* until she was on the hood of my truck[,]" and that

---

(Emphasis added).

"*if it had been more lighting, it would've been better*, . . . if there was lighting compared to like the TA truck stop across the road, I could've *possibly* seen her . . . ." (Emphasis added).

¶18.    Unfortunately, the circuit judge accepted Scott's Plaza, Inc.'s assertion in its motion for summary judgment that "the record is void of any scintilla of evidence that said lighting was . . . inadequate[,]" and found, in part, that:

> the Plaintiffs have failed to come forward with evidence which creates a genuine issue of material fact that must be resolved by a jury.  The Court finds that the Plaintiff has not proven that the *alleged* obstructions, namely the propane tank and the alleged advertising, were a proximate cause of the accident.  The Court finds that the tank itself was 17 ½ feet from the roadway.  The Court further finds that the Plaintiff has not shown that the lighting was insufficient on the premises and thereby was a proximate cause of the accident.

(Emphasis added).  That finding plainly ignored McDonald's sworn statement that the property is well-lit, "but out by the road it's not[.]"  The circuit court improperly injected itself as the sole finder of fact in finding the "*alleged* obstructions" and inadequate lighting were not proximate causes.  Proximate cause is a jury issue.  Obviously, the circuit court failed to view the evidence "in the light most favorable" to the non-movant.  **Green v. Allendale Planting Co.**, 954 So. 2d 1032, 1037 (Miss. 2007) (quoting **Price v. Purdue Pharma Co.**, 920 So. 2d 479, 483 (Miss. 2006)).  "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another party takes the opposite position." **Green**, 954 So. 2d at 1037 (quoting **Price**, 920 So. 2d at 483).  The accident report and sworn testimony, discussed *supra*, viewed "in the light most favorable" to Albert, establish genuine issues of material fact for a jury to determine if inadequate lighting or visual obstructions, or the

11

combination thereof, were proximate or contributory causes of Kyla Albert's death. I would reverse the lower court's decision to grant summary judgment.

**DIAZ, P.J., JOINS THIS OPINION.  EASLEY, J., JOINS THIS OPINION IN PART.**