*161
 
 ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Arthur Eugene Duncan (Arthur) was born on July 16, 1999, at Baptist Memorial Hospital-DeSoto (BMH-DeSo-to) in DeSoto County, Mississippi. Arthur experienced trouble breathing shortly after his birth and it was discovered that he had a bilateral spontaneous pneumothorax. On July 18, 1999, Arthur started having decreased oxygen saturation and was transferred to Baptist Memorial Hospital-East (BMH-East)
 
 [1]
 
 in Memphis, Tennessee, where he died that same day.
 

 ¶ 2. On July 12, 2001, Arthur’s parents, Shawn Lee and April Marie Duncan (the Duncans), individually and as personal representatives and wrongful death beneficiaries of Arthur, filed a complaint in the Circuit Court of DeSoto County, Mississippi. The Duncans asserted in their complaint, claims for medical negligence against Satish Verma, M.D., for care provided to Arthur between July 16,1999, and July 18, 1999. Other defendants were originally named in the case, but they all were dismissed.
 

 ¶ 3. Dr. Verma, a licensed pediatrician, filed a motion for summary judgment on January 24, 2003, and in July 2008, he filed a supplemental motion for summary judgment. In support of his motion, Dr. Ver-ma argued that: he did not owe a duty to the Duncans; the Duncans failed to present any evidence to establish such a duty; and no evidence existed to establish such a duty. The Duncans did not file a response to Dr. Verma’s original motion, but they filed a motion arguing that a factual question was present, thus precluding summary judgment.
 

 ¶ 4. On October 2, 2008, the trial court entered an order granting summary judgment in favor of Dr. Verma and dismissed any and all allegations of negligence. In granting the summary judgment motion, the trial court held that no material issue of fact existed because the Duncans failed to offer any expert testimony regarding the duty owed by Dr. Verma to Arthur after a neonatologist
 
 [2]
 
 had been consulted, had begun actively treating Arthur, and had assumed the responsibility for the care of Arthur. Feeling aggrieved, the Dun-cans appeal the trial court’s ruling. Finding no error, we affirm.
 

 STANDARD OF REVIEW
 

 ¶ 5. This Court reviews a trial court’s ruling on a motion for summary judgment under a de novo standard.
 
 Albert v. Scott’s Truck Plaza, Inc.,
 
 978 So.2d 1264, 1266(¶ 5) (Miss.2008) (citation omitted). The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists.
 
 Id.
 
 “The non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial.”
 
 Id.
 
 This Court will examine “all the evidentia-ry matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits,” and we will do so in a light most favorable to the non-moving party.
 
 Id.
 
 If there exists a genuine issue of material fact, then summary judgment is not appropriate.
 
 Id.
 

 
 *162
 
 DISCUSSION
 

 ¶ 6. The Duncans assert only one issue on appeal—that the trial court erred in holding as a matter of law that Dr. Verma, as treating physician, owed no duty to Arthur after consulting with another specialist on the care of his patient. Accordingly, the Duncans argue that it was error to grant Dr. Verma’s motion for summary judgment.
 

 ¶7. In support of their argument that summary judgment was inappropriate, the Duncans asserted that their expert, Dr. Shane L. Bennoch—a pediatrician and neonatologist, had rendered an opinion to a reasonable degree of medical probability that Dr. Verma and BMH-DeSoto failed to meet the minimum standard of care in the treatment of the child and that said failure to meet the standard of care had resulted in Arthur’s death. The Duncans argued that Dr. Verma, as treating physician and pediatrician, remained responsible for Arthur’s care even after he consulted with a neonatologist.
 

 ¶ 8. In
 
 Cheeks v. Bio-Medical Applications, Inc.,
 
 908 So.2d 117, 120(¶ 8) (Miss.2005) (internal citations omitted), the Mississippi Supreme Court discussed the proof required in medical malpractice cases, stating:
 

 To present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony!;] (2) identifying and articulating the requisite standard of care; and (3) establishing that the defendant physician failed to conform to the standard of care. In addition, (4) the plaintiff must prove the physician’s noncompliance with the standard of care caused the plaintiffs injury, as well as proving (5) the extent of the plaintiffs damages. A physician who is sufficiently “familiar with the standards of a medical specialty, may testify as an expert, even though he does not practice the specialty himself.” “It is our general rule that in a medical malpractice action negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care.”
 

 More specifically, an expert is needed to show how a breach of the physician’s duty proximately caused the plaintiffs injury.
 
 Palmer v. Anderson Infirmary Benevolent Ass’n,
 
 656 So.2d 790, 795 (Miss.1995).
 

 ¶ 9. Mississippi Rule of Civil Procedure 56(b) states that “[a] party against whom a claim,- counter-claim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.” Rule 56(c) states, in pertinent part, that:
 

 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 

 The party- moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law.
 
 Scales v. Lackey Mem’l Hosp.,
 
 988 So.2d 426, 432(¶ 13) (Miss.Ct.App.2008) (quoting
 
 Paepke v. N. Miss. Med. Ctr.,
 
 744 So.2d 809, 812(¶ 14) (Miss.Ct.App.1999)).
 

 ¶ 10. To support his motion for summary judgment, Dr. Verma produced affidavits from Dr. Manoj Narayanan, Dr. Joe Philips, and Dr. Desh Sidhu. Dr. Si-dhu and Dr. Narayanan testified that they
 
 *163
 
 were both personally familiar with the manner in which the neonatologists practice with regard to patients admitted to the nursery at BMH-DeSoto in July 1999.
 

 ¶ 11. In July 1999, BMH-DeSoto could not obtain the services of a neonatologist at their DeSoto County facility. Since there was a need for neonatal services at the facility, BMH-DeSoto entered into the Neonatology Services Agreement (Agreement) with East Memphis Neonatology Associates (the Group)
 
 [3]
 
 on October 1, 1996. The Group would treat sick newborns at BMH-DeSoto by utilizing the services of the Group’s licensed, competent, qualified, and credentialed neonatal nurse practitioners. Under this agreement, the Group provided all control, direction, and supervision to the certified neonatal nurse practitioners.
 

 ¶ 12. Dr. Narayanan stated in his affidavit that “once the neonatologist was consulted regarding Arthur Eugene Duncan and began to treat the baby with the assistance of his nurse practitioners, this child was under the primary care of the neona-tologist ... once the neonatologist accepted the consult and began treatment, he must be considered the primary physician for this infant.” Dr. Narayanan also gave his opinion based on his education, training, experience, and practice at BMH-De-Soto that Dr. Verma did not violate the standard of care. Dr. Philips and Dr. Sidhu both stated in their affidavits that they were of the opinion that Dr. Verma complied with the standards of care expected of a general practitioner in this case.
 

 ¶ 18. Once Arthur began experiencing respiratory distress, Dr. Verma asked the nurses in the nursery to obtain a neonatol-ogy consult, which was a higher level of care for the infant. A short time later, a certified neonatal nurse practitioner was at Arthur’s bedside. The neonatology team assumed care of the infant at that point and executed all orders for his care. No evidence has been provided to show that Dr. Verma gave any further orders regarding the treatment of Arthur. Once the neonatology team accepted the consult, began actively treating Arthur, and assumed responsibility for his care, Dr. Ver-ma no longer owed any duty to Arthur.
 

 ¶ 14. The Duncans have failed to provide any evidence to support their argument that Dr. Verma owed a duty to Arthur after the neonatology team was consulted and began treatment of Arthur. Therefore, they failed to show that a genuine issue of material fact existed, and the trial court correctly granted summary judgment in favor of Dr. Verma.
 

 ¶ 15. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Baptist Memorial Hospital-East is now known as Baptist Memorial Hospital-Memphis and is affiliated with Baptist Memorial Hospital-DeSoto.
 

 [2]
 

 . A neonatologist is a physician who provides neonatal care to newborns. Dr. Verma was not a neonatologist at the time that Arthur was a patient at the hospital. BMH-DeSoto did not have a neonatologist on staff and could not obtain one; therefore, they could not provide neonatal care to newborns in their hospital.
 

 [3]
 

 . East Memphis Neonatology Associates is a Tennessee professional corporation which engages in the practice of medicine, specializing in neonatology. It appears from the record that this corporation has no affiliation with Baptist Memorial Hospital.