# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01655-SCT

*JANE DOE*

*v.*

*HALLMARK PARTNERS, LP, SJP ONE, LLC,*
*VERONICA MOORE, NEW HORIZONS*
*MANAGEMENT, LLC AND SECURITY*
*ENGINEERS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/06/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | ANDREA LA'VERNE FORD EDNEY |
| | EVERETT EAVES WHITE |
| | ADRIA LYNN HERTWIG |
| | LESLIE ELIZABETH HAND |
| | JESSE MITCHELL, III |
| | JESSICA ROSHAUN McLAURIN |
| | TAFFINY SMITH STEWART |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JESSE MITCHELL, III |
| | JESSICA ROSHAUN McLAURIN |
| ATTORNEYS FOR APPELLEES: | ANDREA LA'VERNE FORD EDNEY |
| | ADRIA LYNN HERTWIG |
| | PATRICK PATRONAS |
| | TAFFINY SMITH STEWART |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 05/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Arbitration is a contractual agreement between parties.  And only agreed-upon

arbitrable disputes are subject to arbitration.[1] On de novo review, this Court first determines whether an arbitration agreement is contractually valid. If it is, we then decide whether the dispute at issue is within the arbitration agreement's scope.[2] If the arbitration agreement fails to meet both of these requirements, the dispute cannot be arbitrated. Such is the case here.

¶2. We find the lessee and landlord, in this case, do have a valid arbitration agreement between them as part of a lease agreement. But the lessee's premises-liability claim—a dispute that stems from a physical and sexual assault on the apartment complex premises—is not within the arbitration agreement's scope, as it does not arise under or relate to her "occupancy and leasing of the [apartment]." Because the dispute is outside the agreement's scope, the trial court erred by staying proceedings and ordering arbitration.

¶3. We reverse and remand for further proceedings consistent with this opinion.

**Background Facts and Procedural History**

**I.      Sexual Assault**

¶4. On the morning of April 19, 2014, Jane Doe was kidnapped by two men while walking to her car at her apartment complex. According to Jane, the men forced her into her car at gunpoint, pistol-whipped her, and repeatedly raped her over an extended time. Jane screamed for help during the attack, which took place in the central parking lot near the

---

[1] *See* ***Wellness, Inc. v. Pearl River Cty. Hosp.***, 178 So. 3d 1287, 1290 (Miss. 2015) (citing ***AT&T Techs., Inc. v. Commc'ns Workers of Am.***, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

[2] *See* ***Smith ex rel. Smith v. Captain D's, LLC***, 963 So. 2d 1116, 1119-20 (Miss. 2007) (quoting ***Rogers-Dabbs Chevrolet-Hummer v. Blakeney***, 950 So. 2d 170, 173 (Miss. 2007)).

leasing office.  But neither apartment-complex staff nor security responded.

## II.    Premises-Liability Suit

¶5.    On July 7, 2014, Jane filed suit against the owners, managers, and individual staff of Hallmark Gardens Apartments[3] (Hallmark), Security Engineers, Inc. (SEI), and unknown John Does.  In her complaint, Jane claimed Hallmark and SEI were negligent in their duty to keep the apartment complex reasonably safe.  She further alleged Hallmark and SEI were aware of dangerous conditions on or near the complex.

## III.    Motions to Compel Arbitration

¶6.    Hallmark answered Jane's complaint denying liability and raising defenses.  It also specifically sought to enforce arbitration.  Jane and Hallmark had entered a lease agreement for "Apt. 9-C, of the Hallmark Gardens Apartments located at 987 East Northside Drive Jackson, MS 39206 (the 'Premises')."  As an addendum to her September 20, 2013 lease, Hallmark and Jane executed an arbitration agreement on March 14, 2014, but dated it effective as of September 20, 2013.[4]

¶7.    SEI likewise filed a motion to compel arbitration, citing the arbitration agreement between Jane and Hallmark.  Though a nonsignatory, SEI argued its close legal relationship with Hallmark and Jane's similar claim against it allowed it to enforce the arbitration

---

[3] These defendants are Hallmark Partners, LP; SJP One, LLC; New Horizons Development, LLC; New Horizons Management, LLC; and Veronica Moore.  New Horizons Development, LLC, was later dismissed without prejudice by stipulation on January 28, 2015.

[4] According to Hallmark, Jane signed an identical arbitration agreement when signing the lease agreement, but because of an error, a new arbitration agreement was later executed and the previous one was destroyed.

agreement between Hallmark and Jane.[5]

¶8.    After considering extensive briefing and holding a hearing on the arbitration issue, the trial court granted Hallmark's and SEI's motions. The court found the arbitration agreement between Hallmark and Jane was valid and that Jane's claims were within the scope of the agreement, which both Hallmark and SEI could enforce.

### IV.    Appeal

¶9.    Jane now appeals, arguing: (1) the arbitration agreement is not a broad agreement without limitations; (2) her claims fall outside the agreement's scope; and (3) enforcement of the agreement offends public policy.

### Discussion

¶10.    This Court reviews the grant of a motion to compel arbitration de novo. *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1169 (Miss. 2003) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). Under Mississippi's two-prong test to determine arbitrability, this Court asks: (1) whether the parties have agreed to arbitrate the dispute, and (2) whether legal constraints external to the agreement prevent arbitration. *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116, 1119-20 (Miss. 2007) (quoting *Rogers-Dabbs Chevrolet-Hummer v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007)).

¶11.    Jane's first two claimed errors—the arbitration clause has limits and her claims do not fall within its scope—fall squarely within the test's first prong. Under this prong, this Court

---

[5] SEI had a contract with Hallmark to provide security services for the apartment complex. On appeal, Jane does not contest SEI's rights to compel arbitration as a nonsignatory to the arbitration agreement.

4

asks: (1) Is there a valid arbitration agreement? And, if so, (2) does the dispute fall within the scope of the agreement? *Id*. at 1120 (citing *Rogers-Dabbs*, 950 So. 2d at 173).

## I.      Validity of the Agreement

¶12.    Jane initially argued the arbitration agreement was invalid. But she chose not to pursue this issue on appeal. Furthermore, we find no issue with the validity of the agreement itself.[6] So we focus on the next prong.

## II.     Scope of the Agreement

¶13.    In analyzing this second prong, we acknowledge the federal policy favoring arbitration. *See generally* ***Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.***, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). Indeed, Hallmark insists this policy means this Court must resolve the scope question in favor of arbitration. "But the United States Supreme Court has emphasized that the pro-arbitration federal policy is based on certain principles, the first and foremost being that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" ***Linde Health Care Staffing, Inc. v. Claiborne Cty. Hosp.***, 198 So. 3d 318, 322 (Miss. 2016) (quoting ***AT&T Techs., Inc. v. Commc'ns Workers of Am.***, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)). So the federal policy favoring arbitration requires courts to compel arbitration on only those issues the parties have

---

[6] Jane argued the arbitration agreement was signed several months after she signed her lease, and that she had no choice but to sign. Hallmark countered with an affidavit from a manager that Jane had signed two arbitration agreements. And the later agreement was merely to correct errors in the first. On appeal, Jane does not advance any substantive or procedural-unconscionability defenses.

5

contracted to arbitrate. *Century 21 Maselle & Assocs. v. Smith*, 965 So. 2d 1031, 1036 (Miss. 2007) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)); *see also* *Noble Real Estate, Inc. v. Seder*, 101 So. 3d 197, 201 (Miss. Ct. App. 2012) (citing *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 487 (Miss. 2005)) (emphasizing "this pro-arbitration preference does not and cannot mandate courts to compel arbitration on issues the parties never agreed to arbitrate").

¶14.    Mississippi courts will "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Wedgeworth*, 911 So. 2d at 487 (quoting *Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)).  Nor can a party "be required to submit to arbitration any dispute which he has not agreed so to submit." *Pre-Paid Legal Servs., Inc. v. Battle*, 873 So. 2d 79, 83 (quoting *AT&T Techs.*, 475 U.S. at 648).

¶15.    The question we must decide here is: Did the parties agree to submit to arbitration Jane's claims against Hallmark?  After review, we find they did not.  The parties simply did not contemplate arbitrating Jane's assault- and rape-based lawsuit predicated upon a tort theory of common-law negligence, unrelated to the rights and obligations of the lease.

### A.    Jane's Allegations

¶16.    To answer whether Jane agreed to arbitrate her assault- and rape-based tort claims, this Court must "focus on factual allegations in the complaint rather than the legal causes of action asserted." *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011) (quoting *Waste Mgmt.,*

*Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004)).  Here,

all factual allegations giving rise to Jane's lawsuit involve an attack in the parking lot of

Hallmark apartments.  Jane alleges two men forced her inside her car, beat her with a pistol,

repeatedly raped her, then kidnapped her.  Based on these allegations, it is clear she brought

common-law, tort-based, premises-liability claims against Hallmark and SEI.  She alleges

Hallmark and SEI knew of criminal activity on or near the apartment complex and failed to

take reasonable security measures to keep the apartment complex safe.

¶17.    Notably, Jane's complaint does not allege lease-based or contract-based claims.  In

other words, Jane does not suggest her claims "arise out of" her "occupancy and leasing of

[her apartment]."    Rather, she seeks recovery based on her status as an invitee of the

apartment complex and the common-law duties Hallmark and SEI owed to lessees and non-

lessees alike.[7]

### B.    Broad Versus Narrow Arbitration Clause

¶18.    Hallmark and SEI seem to recognize this but still insist her claims fall within the

broad language of the arbitration provision.  This Court has adopted the Fifth Circuit's

distinction between "narrow" and "broad" arbitration clauses.  *MS Credit Ctr., Inc. v.*

*Horton*, 926 So. 2d 167, 175-76 (Miss. 2006) (citing *Pennzoil Expl. & Prod. Co. v. Ramco*

---

[7] Although not the insurer of an invitee's safety, a premises owner does have the duty
"to keep the premises reasonably safe, and when not reasonably safe, to warn only where
there is a hidden danger or peril that is not in plain and open view."  *Corley v. Evans*, 835
So. 2d 30, 37-38 (Miss. 2003) (quoting *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d
770, 773 (Miss. 1992)).  "[T]his duty extends to protecting tenants from the foreseeable
criminal acts of others."  *Price v. Park Mgmt., Inc.*, 831 So. 2d 550, 551 (Miss. Ct. App.
2002) (citing *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994); *O'Cain v. Harvey*
*Freeman & Sons, Inc.*, 603 So. 2d 824, 830 (Miss. 1991)).

*Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998)).  Narrow arbitration language governs disputes that "arise out of" the contract, while broad clauses cover disputes that "relate to" or "are connected with" the contract.  *Pennzoil Expl.*, 139 F. 3d at 1067.  So if arbitration language is "broad," then arbitration is "not limited to claims that literally 'arise under the contract.'"  *Id*.  Instead, arbitration "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  *Id*.

### C.     Arbitration Clause's Limiting Language

¶19.    Hallmark relies on *Pennzoil Exploration* to argue its arbitration clause was equally broad and, thus, embraced all disputes with a significant relationship to Jane's lease. Hallmark asserts Jane would not have been assaulted and raped but for her leasing of the apartment and presence in the parking lot.  But we find a key distinction between the broad arbitration clause in *Pennzoil Exploration* and the clause here.  There, the clause covered "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with this Agreement"—i.e., the contractual relationship between the two parties.  *Id*. at 1064.  Here, the clause does not cover any dispute "arising out of or in any way related to" the lease—i.e., the contractual relationship between Jane and Hallmark.  Rather, it explicitly covers any dispute "arising out of or in any way related to *Lessee's occupancy and leasing of the subject property*."  (Emphasis added.)  So the language of the arbitration clause, while "broad," covers only disputes significantly related to Jane's "occupancy and leasing of the subject property."

¶20.    We also note the arbitration agreement does not define "subject property."  But the

arbitration agreement is part of the lease agreement. And under the lease agreement, Jane was leasing and occupying "Apt. 9-C of the Hallmark Gardens Apartments located at 987 East Northside Drive Jackson, MS 39206 (the "Premises")." So the lease itself limits the "Premises" to only Apartment 9-C. Indeed, section 10 of the lease, covering "USE OF PREMISES," says that "[t]he Lessee agrees that the Premises shall be used and occupied solely as a private dwelling of the Lessee . . . ."[8] Thus, the "subject property" must refer to Apartment 9-C, since that is the only property Jane both occupied and leased.

¶21.    Consequently, we agree with Jane that the arbitration clause contains a significant limitation. While broad, it only covers matters related to the occupancy and leasing of Apartment 9-C. Returning to Jane's allegations, we find no significant relationship between Jane's claims and her occupancy and leasing of Apartment 9-C. Hallmark insists the location of the assault is not relevant. But the location is highly relevant. Jane was not assaulted in Apartment 9-C. She was raped in the parking lot, a common area. Also, she does not allege Hallmark violated her contractual rights as lessee of Apartment 9-C. In other words, the resolution of this dispute is not dependent upon the construction of the lease and arbitration agreement. Rather, she alleges Hallmark and SEI failed in their common-law duty to keep the parking lot reasonably safe.

¶22.    Negligence claims existed at common law. And the agreement in this case did not place Jane and Hallmark in a relationship that created new duties not otherwise imposed by

---

        [8] Sections 1, 4, 6, 9-13, 15-17, 21-26, 29-37, 40, and 42 of the lease all contain references to the "Premises" and, with little variation, make it clear that the "Premises" refers to Apartment 9-C only.

law. That Jane might not have been in the parking lot had she not leased the apartment, in our view, does not in itself mean her dispute relates to her "occupancy and leasing of the subject property."

### D. Relevant Authorities

¶23. While there is no Mississippi caselaw directly addressing the arbitrability of an assault- or rape-based, premises-liability claim against an apartment complex or security company, both parties agree the most analogous case to the one here is *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116 (Miss. 2007).

¶24. In *Smith*, this Court held the plaintiff's rape-based tort claims—negligent hiring, supervision, and retention of the manager who allegedly sexually assaulted her—were "unquestionably" beyond the scope of the arbitration clause. *Id*. at 1121. In that case, like this one, the arbitration agreement was broad. But it provided that all "claims, disputes, or controversies arising out of or relating to [her] . . . *employment*" would be resolved through arbitration. *Id*. at 1120 (emphasis added). We found the rape-based tort claims were unrelated to employment. *Id*. at 1121. Therefore, they fell outside the arbitration agreement's scope.

¶25. Hallmark tries to distance itself from *Smith*. It asserts that, because Jane did not allege an apartment employee committed the rape or assault, *Smith* does not apply. While Hallmark is correct that *Smith* does not concern third-party liability, as this case does, *Smith*'s basic premise still applies—that even broad arbitration clauses may have limits. *See also Pennzoil Expl.*, 139 F. 3d at 1067 n.8 ("We realize that even broad clauses have their

10

limits."). There, arbitration was limited to "employment." And ***Smith***'s rape-based claims were not "employment" disputes. Here, as already discussed, Jane and Hallmark's arbitration agreement was limited to matters related to the "occupancy and leasing" of Apartment 9-C. And like ***Smith***, Jane's rape-based, premises-liability claims are unrelated to her occupancy and leasing of Apartment 9-C.

¶26. Importantly, in ***Smith***, it could have been argued that, but for her employment, she would never have been raped by her manager. But this Court recognized this incidental connection did not convert her rape-based claims into an "employment" dispute. The same is true here. While Hallmark insists that, but for Jane's lease, she would not have been in the parking lot, this leasing connection is incidental and not significantly related enough to convert her common-law, personal-injury claim into an "occupancy and leasing" dispute.

¶27. However, in spite of ***Smith***, Hallmark claims ***Community Care Center of Vicksburg, LLC v. Mason***, 996 So. 2d 220 (Miss. Ct. App. 2007), should control.[9] There, a nursing-home resident alleged she was assaulted by another resident in the facility, and that assault resulted in her fractured hip. ***Mason***, 996 So. 2d at 224. In contrast to this Court's holding in ***Smith***, the Mississippi Court of Appeals found ***Mason***'s assault-based tort claims of negligence, negligence per se, premises liability, and gross negligence were within the arbitration agreement's scope. ***Id***. at 229. Like ***Smith*** and this case, the arbitration

---

[9] Hallmark also cites an unpublished order from the United States District Court for the Southern District of Mississippi—***Woodard v. Pebble Creek***, Civ. Action No. 3:06-cv-00661 (S.D. Miss. December 17, 2007)—that purportedly compelled arbitration in a rape-based premises-liability case. But Hallmark neither provides the order nor discusses the relevant arbitration agreement's terms or the district court's analysis.

11

agreement in *Mason* was broad. But unlike *Smith* or this case, the arbitration agreement covered ". . . any legal dispute, controversy, demand or claim . . . that arises out of or related to the admission agreement or any services or health care provided by the Facility . . . ." *Mason*, 996 So. 2d at 231. In other words, instead of limiting arbitration to a specific aspect of the contractual relationship—such as "employment" or "occupancy"—the arbitration clause in *Mason* expanded the scope to cover not just matters related to the admission agreement but also "any services or care provided" by the nursing home. So, while the holding in *Mason* appears, at first blush, to favor Hallmark, it is only because the underlying arbitration agreement's language covers more disputes.

¶28. The same is true for the other persuasive authorities Hallmark cites. For example, Hallmark cites an unpublished federal-court opinion as support that the present arbitration agreement is broad enough to cover Jane's claims. *Page v. Captain D's LLC*, Civ. Action No. 2:12cv105-KS-MTP, 2012 WL 5930611 (S.D. Miss. November 27, 2012). In *Page*, the district court compelled arbitration of an employee's sexual-assault-based, sexual-harassment and retaliatory-discharge claims, among others, that allegedly occurred at her employer's restaurant. *Id*. at *9. But in *Page*, the agreement compelled arbitration of claims that "relate to, arise from, concern, or involve in any way . . . the employment of the employee, or any other matter between the Company and the employee, whether or not involving the employee's employment with the Company." *Id*. at *1. Also, under that agreement—unlike this one—the parties agreed to arbitrate "allegations of discrimination based on . . . sex . . . wrongful discharge or wrongful termination . . . negligence and willful misconduct." *Id*.

Again, the arbitration agreement at hand does not mention negligence. Nor does it cover "any matter between" Hallmark and Jane—only those "arising out of or related to Lessee's occupancy and leasing of subject property." So **Page** is easily distinguished based on the extremely broad scope of the arbitration clause in that case.

¶29. Hallmark also cites a case from a Florida trial court, **BKD Twenty-One Management Co., Inc. v. Delsordo**, 127 So. 3d 527 (Fl. Ct. App. 2012), which found negligence-based tort claims by a resident who fell in a common area had to be arbitrated. But in that case, the arbitration clause expressly covered "negligence" claims "amongst the Parties." **Id**. at 531. In fact, the trial court in that case relied on an opinion by the Florida Supreme Court, **Seifert v. U.S. Home Corp.**, 750 So. 2d 633, 642 (Fla. 1999), which had found "that it would be unjust to require arbitration where there was no indication in the arbitration provision that tort claims arising under the common law were contemplated or included." **Delsordo**, 127 So. 3d at 531. But "unlike the arbitration provision in **Seifert**, which had no indication that it applied to independent tort claims, the arbitration agreement in [**Delsordo**] expressly applie[d] to negligence claims." **Id**. So **Delsordo** is also easily distinguished based on its express inclusion of negligence claims.

¶30. In the end, perhaps just as telling as what language Hallmark's arbitration clause includes is what the arbitration clause leaves out. In contrast to **Mason**, Hallmark's arbitration clause here does not include claims beyond those related to the contract, but instead restricts arbitration to claims related to "occupancy and leasing of the subject property." In contrast to **Page**, the arbitration clause here does not cover "any matter

13

between" Hallmark and Jane. And in contrast to **Delsordo**, the arbitration clause here makes no mention of agreeing to arbitrate tort, negligence, personal injury, or other common-law claims. *See* **Seifert**, 750 So. 2d at 635 (holding "that an agreement to arbitrate . . . does not necessarily mandate arbitration of a subsequent and independent tort action based upon common law duties.").

¶31.    As the drafter of the arbitration clause, Hallmark could have easily included language indicating tort claims based on common-law duties would be subject to arbitration. But Hallmark did not.[10]

¶32.    Instead, Hallmark drafted an arbitration clause including the limiting phrase "occupancy and leasing of subject property" and omitting any language indicating Jane would have to arbitrate claims based on personal injury, common-law duties, or tort. And despite Hallmark's assertions, the fact that Jane *might* not have been in the parking lot had she not leased the apartment does not itself make her dispute arise out of or relate to her "occupancy and leasing of the subject property."

---

[10] Hallmark makes the assertion that, because specific disputes were expressly exempted from arbitration, then all other disputes must be submitted to arbitration. Hallmark did specifically exclude disputes: "(a) of $5,000.00 or less; or (b) of any amount relating to rent payment disputes as provided for in the Lease Agreement; or (c) of any amount relating to damage to the Lessor's property as provided for in the Lease Agreement . . . ." However, Hallmark's argument rings hollow. The existence of specific exclusions is not evidence the parties intended to arbitrate *all* other matters. Moreover, Hallmark's argument here fails to overcome the plain, limiting language of the agreement—that only a "dispute, claim or controversy (except as expressly identified below) arising out of or in any way related to *Lessee's occupancy and leasing of the subject property . . .*" will be arbitrated. (Emphasis added.)

14

¶33.    We thus find Jane's claims fall outside the arbitration agreement's scope.[11]

**Conclusion**

¶34.    Because Jane's premises-liability claims fall outside the arbitration agreement's scope, we find the trial court erred by staying proceedings and compelling arbitration. We reverse the trial court's order to stay the proceedings and compel arbitration. And we remand this case to the trial court for further proceedings consistent with this opinion.

¶35.    **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶36.    Doe filed a premises-liability suit against the property owners from whom she leases an apartment. In her lease, the parties agreed to arbitrate all disputes "arising out of or in any way related to Lessee's occupancy and leasing of the subject property." In premises liability, a property owner's duty is based on his relationship to the plaintiff.[12] In Doe's case, that duty

---

[11] Because we find Jane's claims do not fall within the scope of the arbitration clause, we need not address Jane's alternative argument—that, as a matter of public policy, arbitration agreements in residential leases should be void.

[12] *Albert v. Scott's Truck Plaza, Inc.*, 978 So. 2d 1264, 1266 (Miss. 2008) (citing *Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004); *Corley v. Evans*, 835 So. 2d 30, 37 (Miss. 2003)) ("For a premises-liability claim, as in this case, duty is contingent on the status of the injured person. Thus, the first step in determining duty is to identify the status of the injured at the time of the injury. Mississippi adheres to the invitee/licensee/trespasser trichotomy when analyzing the property owner's duty of care.").

15

will be based on the landlord/tenant relationship.[13]   Because the lease creates the landlord/tenant relationship, and that relationship creates the duty upon which Doe bases her claim, the claim clearly relates to Doe's occupancy and leasing of the subject property and is subject to the arbitration clause.  So I dissent.

¶37.	The sole question before this Court is whether this claim falls within the scope of the arbitration clause.  "[A]ll doubts concerning the scope of arbitrable issues, the construction of the contract language, and asserted defenses to arbitration must be resolved in favor of arbitration."[14]  "Broad arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract."[15]  When an arbitration clause utilizes broad arbitration language "'it is only necessary that the dispute "touch" matters covered by [the contract] to be arbitrable.'"[16]

¶38.	Jane Doe agreed to arbitrate—not only all disputes "arising out of" the lessee's "occupancy and leasing" of the property—but also all disputes "in any way related to" the

---

[13] *Fipps v. Glenn Miller Constr. Co., Inc.*, 662 So. 2d 594, 596 (Miss. 1995) ("The landlord/tenant relationship abides by a straight negligence standard. Although *Cappaert v. Junker*, 413 So. 2d 378 (Miss. 1982), dealt with the validity of exculpatory clauses in leases, it set forth the lessor's duty to the lessee by stating: 'In leases involving residential property leased to multiple tenants, the lessor, with respect to common areas, has the duty to use reasonable care to keep the common areas reasonably safe and is liable for damages for failure to perform the duty.'").

[14] *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).

[15] *Horton*, 926 So. 2d at 176 (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998)).

[16] *Horton*, 926 So. 2d at 176 (quoting *Pennzoil Expl. & Prod. Co.*, 138 F.3d at 1069).

lessee's "leasing of the subject property." Because this arbitration clause employs the broad language "in any way related to,"any dispute that merely touches upon Doe's "occupancy and leasing of the subject property" is subject to arbitration.

¶39. As the majority recognizes, Doe has lodged a premises-liability claim against the defendants. She claims the defendants had a duty to employ reasonable security measures to keep her safe from criminal activity in the common areas of the apartment premises. The "duty" to which both Doe and the majority refer is created by Doe's status as a tenant.

¶40. In *Fipps v. Glenn Miller Construction Company, Inc.*, where a tenant sued his apartment complex's owner claiming he tripped on an uneven walkway in a common area of the apartment complex, this Court explained that the duty owed to the tenant by the apartment owner depends on the existence of the landlord/tenant relationship:

> The landlord/tenant relationship abides by a straight negligence standard. Although *Cappaert v. Junker*, 413 So. 2d 378 (Miss. 1982), dealt with the validity of exculpatory clauses in leases, it set forth the lessor's duty to the lessee by stating:
>
>> In leases involving residential property leased to multiple tenants, the lessor, with respect to common areas, has the duty to use reasonable care to keep the common areas reasonably safe and is liable for damages for failure to perform the duty.
>
> *Cappaert*, 413 So. 2d at 380. Fipps clearly falls within this standard of care. He lives in Miller's multi-unit complex, which was designed for residential purposes. The area where Fipps fell was like a breezeway, a common area within the control of the landlord.[17]

¶41. *Fipps* held the landlord had a duty to keep the common areas of the apartment complex safe for the tenant because of the relationship between them. For a different reason,

---

[17] *Fipps*, 662 So. 2d at 595–96.

Doe similarly claims the landlord failed to keep the common areas of the apartment complex safe for the tenant.

¶42.    In other words, Doe's claim depends on the duty owed to her which, in turn, is determined by the landlord/tenant relationship.   That relationship exists because Doe occupies and leases her apartment.  So her claim is "related to" her "occupancy and leasing of the subject property," and therefore falls within the scope of the arbitration clause.